8/99

# STANDARD FORM OF STORE LEASE

**The Real Estate Board of New York, Inc.**

**Agreement of Lease,** made as of this 30th day of August in the year 2023, between 403 LLC, having an address at 9322 3rd Avenue, Suite 502, Brooklyn, New York 11209

party of the first part, hereinafter referred to as OWNER, and SWY Entertainments LLC, having an address at 8504 121st Street, Kew Gardens, New York 11415

party of the second part, hereinafter referred to as TENANT,

**Witnesseth:** Owner hereby leases to Tenant and Tenant hereby hires from Owner certain ground floor and second floor space each as more fully shown in Exhibit "A" attached hereto (the "Demised Premises")

in the building known as 531 86th Street (the "Building")
in the Borough of Brooklyn, City of New York, for the term of approximately fifteen (15) years and two (2) months

(or until such term shall sooner cease and expire as hereinafter provided) to commence and to end as provided in Article 40A of the rider annexed hereto

both dates inclusive, at an annual rental rate as provided in Article 40B of the rider annexed hereto

which Tenant agrees to pay in lawful money of the United States which shall be legal tender in payment of all debts and dues, public and private, at the time of payment, in equal monthly installments in advance on the first day of each month during said term, at the office of Owner or such other place as Owner may designate, without any set off or deduction whatsoever, except that Tenant shall pay the first monthly installment(s) on the execution hereof (unless this lease be a renewal).

In the event that, at the commencement of the term of this lease, or thereafter, Tenant shall be in default in the payment of rent to Owner pursuant to the terms of another lease with Owner or with Owner's predecessor in interest, Owner may at Owner's option and without notice to Tenant add the amount of such arrears to any monthly installment of rent payable hereunder and the same shall be payable to Owner as additional rent.

The parties hereto, for themselves, their heirs, distributees, executors, administrators, legal representatives, successors and assigns, hereby covenant as follows:

**Rent:** 1. Tenant shall pay the rent as above and as hereinafter provided.

**Occupancy:** 2. Tenant shall use and occupy the demised premises for a Launch indoor entertainment park and any other retail operations except for a use in conflict with Spectrum Mobile. No alcohol sales shall be permitted.

and for no other purpose. Tenant shall at all times conduct its business in a high grade and reputable manner, shall not violate Article 37 hereof, and shall keep show windows and signs in a neat and clean condition.

1 **Alterations:** 3. Tenant shall make no changes in or to the demised premises of any nature without Owner's prior written consent. Subject to the prior written consent of Owner, and to the provisions of this article, Tenant, at Tenant's expense, may make alterations, installations, additions or improvements which are non-structural and which do not affect utility services or plumbing and electrical lines, in or to the interior of the demised premises by using contractors or mechanics first approved in each instance by Owner. Tenant shall, before making any alterations, additions, installations or improvements, at its expense, obtain all permits, approvals and certificates required by any governmental or quasi-governmental bodies and (upon completion) certificates of final approval thereof, and shall deliver promptly duplicates of all such permits, approvals and certificates to Owner, and Tenant agrees to carry, and will cause Tenant's contractors and sub-contractors to carry, such worker's compensation, general liability, personal and property damage insurance as Owner may require. If any mechanic's lien is filed against the demised premises, or the building of which the same forms a part, for work claimed to have been done for, or materials furnished to, Tenant, whether or not done pursuant to this article, the same shall be discharged by Tenant within 30 days thereafter, at Tenant's expense, by payment or filing a bond as permitted by law. All fixtures and all paneling, partitions, railings and like installations, installed in the demised premises at any time, either by Tenant or by Owner on Tenant's behalf, shall, upon installation, become the property of Owner and shall remain upon and be surrendered with the demised premises unless Owner, by notice to Tenant no later than twenty days prior to the date fixed as the termination of this lease, elects to relinquish Owner's rights thereto and to have them removed by Tenant, in which event, the same shall be removed from the demised premises by Tenant prior to the expiration of the lease, at Tenant's expense. Nothing in this article shall be construed to give Owner title to, or to prevent Tenant's removal of, trade fixtures, moveable office furniture and equipment, but upon removal of same from the demised premises or upon removal of other installations as may be required by Owner, Tenant shall immediately and at its expense, repair and restore the demised premises to the condition existing prior to any such installations, and repair any damage to the demised premises or the building due to such removal. All property permitted or required to be removed by Tenant at the end of the term remaining in the demised premises after Tenant's removal shall be deemed abandoned and may, at the election of Owner, either be retained as Owner's property or may be removed from the demised premises by Owner at Tenant's expense.

**Repairs:** 4. Owner shall maintain and repair the public portions of the building, both exterior and interior, except that if Owner allows Tenant to erect on the outside of the building a sign or signs, or a hoist, lift or sidewalk elevator for the exclusive use of ~~Tenant.~~ Tenant shall maintain such exterior installations in good appearance, shall cause the same to be operated in a good and workmanlike manner, shall make all repairs thereto necessary to keep same in good order and condition, at Tenant's own cost and expense, and shall cause the same to be covered by the insurance provided for hereafter in Article 8. Tenant shall, throughout the term of this lease, take good care of the demised premises and the fixtures and appurtenances therein, and the sidewalks adjacent thereto, and at its sole cost and expense, make all non-structural repairs thereto as and when needed to preserve them in good working order and condition, reasonable wear and tear, obsolescence and damage from the elements, fire or other casualty, excepted. If the demised premises be or become infested with vermin, Tenant shall at Tenant's expense, cause the same to be exterminated from time to time to the satisfaction of Owner. Except as specifically provided in Article 9 or elsewhere in this lease, there shall be no allowance to the Tenant for the diminution of rental value and no liability on the part of Owner by reason of inconvenience, annoyance or injury to business arising from Owner, Tenant or others, making or failing to make any repairs, alterations, additions or improvements in or to any portion of the building, including the erection or operation of any crane, derrick or sidewalk shed, or in or to the demised premises or the fixtures, appurtenances or equipment thereof. It is specifically agreed that Tenant shall be not entitled to any set off or reduction of rent by reason of any failure of Owner to comply with the covenants of this or any other article of this lease. Tenant agrees that Tenant's sole remedy at law in such instance will be by way of an action for damages for breach of contract. The provisions of this Article 4 with respect to the making of repairs shall not apply in the case of fire or other Casualty, which are dealt with in Article 9 hereof.

**Window Cleaning:** 5. Tenant will not clean nor require, permit, suffer or allow any window in the demised premises to be cleaned from the outside in violation of Section 202 of the New York State Labor Law or any other applicable law or of the Rules of the Board of Standards and Appeals, or of any other Board or body having or asserting jurisdiction.

**Requirements of Law, Fire Insurance:** 6. Prior to the commencement of the lease term, if Tenant is then in possession, and at all times thereafter, Tenant, at Tenant's sole cost and expense, shall promptly comply with all present and future laws, orders and regulations of all state, federal, municipal and local governments, departments, commissions and boards and any direction of any public officer pursuant to law, and all orders, rules and regulations of the New York Board of Fire Underwriters or the Insurance Services Office, or any similar body which shall impose any violation, order or duty upon Owner or Tenant with respect to the demised premises, and with respect to the portion of the sidewalk adjacent to the demised premises, if the demised premises are on the street level, whether or not arising out of Tenant's use or manner of use thereof, or with respect to the building, if arising out of Tenant's use or manner of use of the demised premises or the building (including the use permitted under the lease). Except as provided in Article 29 hereof, nothing herein shall

SEE RIDER ATTACHED HERETO AND MADE A PART HEREOF

require Tenant to make structural repairs or alterations unless Tenant has by its manner of use of the demised premises or method of operation therein, violated any such laws, ordinances, orders, rules, regulations or requirements with respect thereto. Tenant shall not do or permit any act or thing to be done in or to the demised premises which is contrary to law, or which will invalidate or be in conflict with public liability, fire or other policies of insurance at any time carried by or for the benefit of Owner. Tenant shall pay all costs, expenses, fines, penalties or damages, which may be imposed upon Owner by reason of Tenant's failure to comply with the provisions of this article. If the fire insurance rate shall, at the beginning of the lease, or at any time thereafter, be higher than it otherwise would be, then Tenant shall reimburse Owner, as additional rent hereunder, for that portion of all fire insurance premiums thereafter paid by Owner which shall have been charged because of such failure by Tenant, to comply with the terms of this article. In any action or proceeding wherein Owner and Tenant are parties, a schedule or "make-up" of rate for the building or the demised premises issued by a body making fire insurance rates applicable to said demised premises shall be conclusive evidence of the facts therein stated and of the several items and charges in the fire insurance rate then applicable to said demised premises.

**Subordination:** 7. This lease is subject and subordinate to all ground or underlying leases and to all mortgages which may now or hereafter affect such leases or the real property of which the demised premises are a part, and to all renewals, modifications, consolidations, replacements and extensions of any such underlying leases and mortgages. This clause shall be self-operative and no further instrument of subordination shall be required by any ground or underlying lessor or by any mortgagee, affecting any lease or the real property of which the demised premises are a part. In confirmation of such subordination, Tenant shall from time to time execute promptly any certificate that Owner may request.

**Tenant's Liability Insurance Property Loss, Damage, Indemnity:** 8. Owner or its agents shall not be liable for any damage to property of Tenant or of others entrusted to employees of the building, nor for loss of, or damage to, any property of Tenant by theft or otherwise, nor for any injury or damage to persons or property resulting from any cause of whatsoever nature, unless caused by or due to the negligence of Owner, its agents, servants or employees. Owner or its agents will not be liable for any such damage caused by other tenants or persons in, upon or about said building, or caused by operations in construction of any private, public or quasi public work. Tenant agrees, at Tenant's sole cost and expense, to maintain general public liability insurance in standard form in favor of Owner and Tenant against claims for bodily injury or death or property damage occurring in or upon the demised premises, effective from the date Tenant enters into possession of the demised permises and during the term of this lease. Such insurance shall be in an amount and with carriers acceptable to the Owner. Such policy or policies shall be delivered to the Owner. On Tenant's default in obtaining or delivering any such policy or policies or failure to pay the charges therefor, Owner may secure or pay the charges for any such policy or policies and charge the Tenant as additional rent therefor. Tenant shall indemnify and save harmless Owner against and from all liabilities, obligations, damages, penalties, claims, costs and expenses for which Owner shall not be reimbursed by insurance, including reasonable attorneys' fees, paid, suffered or incurred as a result of any breach by Tenant, Tenant's agent, contractors, employees, invitees, or licensees, of any covenant on condition of this lease, or the carelessness, negligence or improper conduct of the Tenant, Tenant's agents, contractors, employees, invitees or licensees. Tenant's liability under this lease extends to the acts and omissions of any subtenant, and any agent, contractor, employee, invitee or licensee of any subtenant. In case any action or proceeding is brought against Owner by reason of any such claim, Tenant, upon written notice from Owner, will, at Tenant's expense, resist or defend such action or proceeding by counsel approved by Owner in writing, such approval not to be unreasonably withheld.

**Destruction, Fire, and Other Casualty:** 9. (a) If the demised premises or any part thereof shall be damaged by fire or other casualty, Tenant shall give immediate notice thereof to Owner and this lease shall continue in full force and effect except as hereinafter set forth. (b) If the demised premises are partially damaged or rendered partially unusable by fire or other casualty, the damages thereto shall be repaired by and at the expense of Owner, and the rent and other items of additional rent, until such repair shall be substantially completed, shall be apportioned from the day following the casualty according to the part of the demised premises which is usable. (c) If the demised premises are totally damaged or rendered wholly unusable by fire or other casualty, then the rent and other items of additional rent as hereinafter expressly provided shall be proportionately paid up to the time of the casualty and thenceforth shall cease until the date when the demised premises shall have been repaired and restored by Owner (or sooner reoccupied in part by Tenant then rent shall be apportioned as provided in subsection (b) above), subject to Owner's right to elect not to restore the same as hereinafter provided. (d) If the demised premises are rendered wholly unusable or (whether or not the demised premises are damaged in whole or in part) if the building shall be so damaged that Owner shall decide to demolish it or to rebuild it, then, in
2 any of such events, Owner may elect to terminate this lease by written notice to Tenant given within 90 days after such fire or casualty or 30 days after adjustment of the insurance claim for such fire or casualty, whichever is sooner, specifying a date for the expiration of the lease, which date shall not be more than 60 days after the giving of such notice, and upon the date specified in such notice the term of this lease shall expire as fully and completely as if such date were the date set forth above for the termination of this lease and Tenant shall forthwith quit, surrender and vacate the demised premises without prejudice however, to Owner's rights and remedies against Tenant under the lease provisions in effect prior to such termination, and any rent owing shall be paid up to such date and any payments of rent made by Tenant which were on account of any period subsequent to such date shall be returned to Tenant. Unless Owner shall serve a termination notice as provided for herein, Owner shall make the repairs and restorations under the conditions of (b) and (c) hereof, with all reasonable expedition subject to delays due to adjustment of insurance claims, labor troubles and causes beyond Owner's control. After any such casualty, Tenant shall cooperate with Owner's restoration by removing from the premises as promptly as reasonably possible, all of Tenant's salvageable inventory and movable equipment, furniture, and other property. Tenant's liability for rent shall resume five (5) days after written notice from Owner that the demised premises are substantially ready for Tenant's occupancy. (e) Nothing contained hereinabove shall relieve Tenant from liability that may exist as a result of damage from fire or other casualty. Notwithstanding the foregoing, including Owner's obligation to restore under subparagraph (b) above, each party shall look first to any insurance in its favor before making any claim against the other party for recovery for loss or damage resulting from fire or other casualty, and to the extent that such insurance is in force and collectible, and to the extent permitted by law, Owner and Tenant each hereby releases and waives all right of recovery with respect to subparagraphs (b), (d) and (e) above, against the other, or any one claiming through or under each of them by way of subrogation or otherwise. The release and waiver herein referred to shall be deemed to include any loss or damage to the demised premises and/or to any personal property, equipment, trade fixtures, goods and merchandise located therein. The foregoing release and waiver shall be in force only if both releasors' insurance policies contain a clause providing that such a release or waiver shall not invalidate the insurance. Tenant acknowledges that Owner will not carry insurance on Tenant's furniture and/or furnishings or any fixtures or equipment, improvements, or appurtenances removable by Tenant, and agrees that Owner will not be obligated to repair any damage thereto or replace the same. (f) Tenant hereby waives the provisions of Section 227 of the Real Property Law and agrees that the provisions of this article shall govern and control in lieu thereof.

Rider to be added if necessary.

**Eminent Domain:** 10. If the whole or any part of the demised premises shall be acquired or condemned by Eminent Domain for any public or quasi public use or purpose, then and in that event, the term of this lease shall cease and terminate from the date of title vesting in such proceeding, and Tenant shall have no claim for the value of any unexpired term of said lease. Tenant shall have the right to make an independent claim to the condemning authority for the value of Tenant's moving expenses and personal property, trade fixtures and equipment, provided Tenant is entitled pursuant to the terms of the lease to remove such property, trade fixtures and equipment at the end of the term, and provided further such claim does not reduce Owner's award.

**Assignment, Mortgage, Etc.:** 11. Tenant, for itself, its heirs, distributees, executors, administrators, legal representatives, successors and assigns expressly covenants that it shall not assign, mortgage or encumber this agreement, nor underlet, or suffer or permit the demised premises or any part thereof to be used by others, without the prior written consent of Owner in each instance. Transfer of the majority of the stock of a corporate tenant or the majority partnership interest of a partnership tenant shall be deemed an assignment. If this lease be assigned, or if the demised premises or any part thereof be underlet or occupied by anybody other than Tenant, Owner may, after default by Tenant, collect rent from the assignee, under-tenant or occupant, and apply the net amount collected to the rent herein reserved, but no such assignment, underletting, occupancy or collection shall be deemed a waiver of the covenant, or the acceptance of the assignee, undertenant or occupant as tenant, or a release of Tenant from the further performance by Tenant of covenants on the part of Tenant herein contained. The consent by Owner to an assignment or underletting shall not in any wise be construed to relieve Tenant from obtaining the express consent in writing of Owner to any further assignment or underletting.

**Electric Current:** 12. Rates and conditions in respect to submetering or rent inclusion, as the case may be, to be added in RIDER attached hereto. Tenant covenants and agrees that at all times its use of electric current shall not exceed the capacity of existing feeders to the building or the risers or wiring installation, and Tenant may not use any electrical equipment which, in Owner's opinion, reasonably exercised, will overload such installations or interfere with the use thereof by other tenants of the building. The change at any time of the character of electric service shall in no wise make Owner liable or responsible to Tenant, for any loss, damages or expenses which Tenant may sustain.

**Access to Premises:** 13. Owner or Owner's agents shall have the right (but shall not be obligated) to enter the demised premises in any emergency at any time, and, at 3
other reasonable times, to examine the same and to make such repairs, replacements and improvements as Owner may deem necessary and reasonably desirable to any portion of the building or which Owner may elect to perform, in the demised premises, following Tenant's failure to make repairs or perform any work which Tenant is obligated to perform under this lease, or for the purpose of complying with laws, regulations and other directions of governmental authorities. Tenant shall permit Owner to use and maintain and replace pipes and conduits in and through the demised premises and to erect new pipes and conduits therein, provided they are concealed within the walls, floors or ceiling, wherever practicable. Owner may, during the progress of any work in the demised premises, take all necessary materials and equipment into said premises without the same constituting an eviction, nor shall the Tenant be entitled to any abatement of rent while such work is in progress, nor to any damages by reason of loss or interruption of business or otherwise. Throughout the term hereof Owner shall have the right to enter the demised premises at reasonable hours for the purpose of showing the same to prospective purchasers or mortgagees of the building, and during the last six months of the term for the purpose of showing the same to prospective tenants, and may, during said six months period, place upon the demised premises the usual notice "To Let" and "For Sale", which notices Tenant shall permit to remain thereon without molestation. If Tenant is not present to open and permit an entry into the demised premises, Owner or Owner's agents may enter the same whenever such entry may be necessary or permissible, by master key or forcibly, and provided reasonable care is exercised to safeguard Tenant's property, such entry shall not render Owner or its agents liable therefor, nor in any event shall the obligations of Tenant hereunder be affected. If during the last month of the term Tenant shall have removed all or substantially all of Tenant's property therefrom, Owner may immediately enter, alter, renovate or redecorate the demised premises without limitation or abatement of rent, or incurring liability to Tenant for any compensation, and such act shall have no effect on this lease or Tenant's obligations hereunder. Owner shall have the right at any time, without the same constituting an eviction and without incurring liability to Tenant therefor, to change the arrangement and/or location of public entrances, passageways, doors, doorways, corridors, elevators, stairs, toilets, or other public parts of the building, and to change the name, number or designation by which the building may be known.

SEE RIDER ATTACHED HERETO AND MADE A PART HEREOF

**Vault, Vault Space, Area:** 14. No vaults, vault space or area, whether or not enclosed or covered, not within the property line of the building, is leased hereunder, anything contained in or indicated on any sketch, blue print or plan, or anything contained elsewhere in this lease to the contrary notwithstanding. Owner makes no representation as to the location of the property line of the building. All vaults and vault space and all such areas not within the property line of the building, which Tenant may be permitted to use and/or occupy, is to be used and/or occupied under a revocable license, and if any such license be revoked, or if the amount of such space or area be diminished or required by any federal, state or municipal authority or public utility, Owner shall not be subject to any liability, nor shall Tenant be entitled to any compensation or diminution or abatement of rent, nor shall such revocation, diminution or requisition be deemed constructive or actual eviction. Any tax, fee or charge of municipal authorities for such vault or area shall be paid by Tenant.

**Occupancy:** 15. Tenant will not at any time use or occupy the demised premises in violation of Articles 2 or 37 hereof, or of the certificate of occupancy issued for the building of which the demised premises are a part. Tenant has inspected the demised premises and accepts them "as-is", subject to the riders annexed hereto with respect to Owner's work, if any. In any event, Owner makes no representation as to the condition of the demised premises, and Tenant agrees to accept the same subject to violations, whether or not of record.

**Bankruptcy:** 16. (a) Anything elsewhere in this lease to the contrary notwithstanding, this lease may be cancelled by Landlord by the sending of a written notice to Tenant within a reasonable time after the happening of any one or more of the following events: (1) the commencement of a case in bankruptcy or under the laws of any state naming Tenant as the debtor; or (2) the making by Tenant of an assignment or any other arrangement for the benefit of creditors under any state statute. Neither Tenant nor any person claiming through or under Tenant, or by reason of any statute or order of court, shall thereafter be entitled to possession of the premises demised but shall forthwith quit and surrender the demised premises. If this lease shall be assigned in accordance with its terms, the provisions of this Article 16 shall be applicable only to the party then owning Tenant's interest in this lease.

(b) It is stipulated and agreed that in the event of the termination of this lease pursuant to (a) hereof, Owner shall forthwith, notwithstanding any other provisions of this lease to the contrary, be entitled to recover from Tenant, as and for liquidated damages, an amount equal to the difference between the rent reserved hereunder for the unexpired portion of the term demised and the fair and reasonable rental value of the demised premises for the same period. In the computation of such damages the difference between any installment of rent becoming due hereunder after the date of termination and the fair and reasonable rental value of the demised premises for the period for which such installment was payable shall be discounted to the date of termination at the rate of four percent (4%) per annum. If the demised premises, or any part thereof, be re-let by the Owner for the unexpired term of said lease, or any part thereof, before presentation of proof of such liquidated damages to any court, commission or tribunal, the amount of rent reserved upon such re-letting shall be deemed to be the fair and reasonable rental value for the part or the whole of the demised premises so re-let during the term of the re-letting. Nothing herein contained shall limit or prejudice the right of the Owner to prove for and obtain as liquidated damages, by reason of such termination, an amount equal to the maximum allowed by any statute or rule of law in effect at the time when, and governing the proceedings in which, such damages are to be proved, whether or not such amount be greater, equal to, or less than the amount of the difference referred to above.

**Default:** 17. (1) If Tenant defaults in fulfilling any of the covenants of this lease other than the covenants for the payment of rent or additional rent; or if the demised premises become vacant or deserted; or if any execution or attachment shall be issued against Tenant or any of Tenant's property, whereupon the demised premises shall be taken or occupied by someone other than Tenant; or if this lease be rejected under Section 365 of Title 11 of the U.S. Code (Bankruptcy Code); or if Tenant shall fail to move into or take possession of the demised premises within thirty (30) days after the commencement of the term of this lease, of which fact Owner shall be the sole judge; then, in any one or more of such events, upon Owner serving a written fifteen (15) days notice upon Tenant specifying the nature of said default, and upon the expiration of said fifteen (15) days, if Tenant shall have failed to comply with or remedy such default, or if the said default or omission complained of shall be of a nature that the same cannot be completely cured or remedied within said fifteen (15) day period, and if Tenant shall not have diligently commenced curing such default within such fifteen (15) day period, and shall not thereafter with reasonable diligence and in good faith proceed to remedy or cure such default, then Owner may serve a written five (5) days notice of cancellation of this lease upon Tenant, and upon the expiration of said five (5) days, this lease and the term thereunder shall end and expire as fully and completely as if the expiration of such five (5) day period were the day herein definitely fixed for the end and expiration of this lease and the term thereof and Tenant shall then quit and surrender the demised premises to Owner, but Tenant shall remain liable as hereinafter provided.

(2) If the notice provided for in (1) hereof shall have been given, and the term shall expire as aforesaid; or if Tenant shall make default in the payment of the rent reserved herein, or any item of additional rent herein mentioned, or any part of either, or in making any other payment herein required; then, and in any of such events, Owner may without notice, re-enter the demised premises either
4 ~~by force or otherwise~~, and dispossess Tenant by summary proceedings or otherwise, and the legal representative of Tenant or other occupant of the demised premises, and remove their effects and hold the demised premises as if this lease had not been made, and Tenant hereby waives the service of notice of intention to re-enter or to institute legal proceedings to that end.

**Remedies of Owner and Waiver of Redemption:** 18. In case of any such default, re-entry, expiration and/or dispossess by summary proceedings or otherwise, (a) the rent, and additional rent, shall become due thereupon and be paid up to the time of such re-entry, dispossess and/or expiration, (b) Owner may re-let the demised premises or any part or parts thereof, either in the name of Owner or otherwise, for a term or terms, which may at Owner's option be less than or exceed the period which would otherwise have constituted the balance of the term of this lease, and may grant concessions or free rent or charge a higher rental than that in this lease, and/or (c) Tenant or the legal representatives of Tenant shall also pay Owner, as liquidated damages, for the failure of Tenant to observe and perform said Tenant's covenants herein contained, any deficiency between the rent hereby reserved and/or covenanted to be paid and the net amount, if any, of the rents collected on account of the subsequent lease or leases of the demised premises for each month of the period which would otherwise have constituted the balance of the term of this lease. The failure of Owner to re-let the demised premises or any part or parts thereof shall not release or affect Tenant's liability for damages. In computing such liquidated damages there shall be added to the said deficiency such expenses as Owner may incur in connection with re-letting, such as legal expenses, reasonable attorneys' fees, brokerage, advertising and for keeping the demised premises in good order, or for preparing the same for re-letting. Any such liquidated damages shall be paid in monthly installments by Tenant on the rent day specified in this lease. Owner, in putting the demised premises in good order or preparing the same for re-rental may, at Owner's option, make such alterations, repairs, replacements, and/or decorations in the demised premises as Owner, in Owner's sole judgement, considers advisable and necessary for the purpose of re-letting the demised premises, and the making of such alterations, repairs, replacements, and/or decorations shall not operate or be construed to release Tenant from liability. Owner shall in no event be liable, in any way whatsoever, for failure to re-let the demised premises, or in the event that the demised premises are re-let, for failure to collect the rent thereof under such re-letting, and in no event shall Tenant be entitled to receive any excess, if any, of such net rent collected over the sums payable by Tenant to Owner hereunder. In the event of a breach or threatened breach by Tenant of any of the covenants or provisions hereof, Owner shall have the right of injunction and the right to invoke any remedy allowed at law or in equity as if re-entry, summary proceedings and other remedies were not herein provided for. Mention in this lease of any particular remedy, shall not preclude Owner from any other remedy, in law or in equity. Tenant hereby expressly waives any and all rights of redemption granted by or under any present or future laws.

**Fees and Expenses:** 19. If Tenant shall default in the observance or performance of any term or covenant on Tenant's part to be observed or performed under, or by virtue of, any of the terms or provisions in any article of this lease, after notice if required, and upon expiration of any applicable grace period if any, (except in an emergency), then, unless otherwise provided elsewhere in this lease, Owner may immediately, or at any time thereafter, and without notice, perform the obligation of Tenant thereunder, and if Owner, in connection therewith or in connection with any default by Tenant in the covenant to pay rent hereunder, makes any expenditures or incurs any obligations for the payment of money, including but not limited to reasonable attorney's fees, in instituting, prosecuting or defending any actions or proceeding, and prevails in any such action or proceeding, such sums so paid or obligations incurred with interest and costs shall be deemed to be additional rent hereunder and shall be paid by Tenant to Owner within ten (10) days of rendition of any bill or statement to Tenant therefor, and if Tenant's lease term shall have expired at the time of making of such expenditures or incurring of such obligations, such sums shall be recoverable by Owner as damages.

**No Representations by Owner:** 20. Neither Owner nor Owner's agent have made any representations or promises with respect to the physical condition of the building, the land upon which it is erected or the demised premises, the rents, leases, expenses of operation, or any other matter or thing affecting or related to the demised premises, except as herein expressly set forth, and no rights, easements or licenses are acquired by Tenant by implication or otherwise, except as expressly set forth in the provisions of this lease. Tenant has inspected the building and the demised premises and is thoroughly acquainted with their condition, and agrees to take the same "as-is", and acknowledges that the taking of possession of the demised premises by Tenant shall be conclusive evidence that the said premises and the building of which the same form a part were in good and satisfactory condition at the time such possession was so taken, except as to latent defects. All understandings and agreements heretofore made between the parties hereto are merged in this contract, which alone fully and completely expresses the agreement between Owner and Tenant, and any executory agreement hereafter made shall be ineffective to change, modify, discharge or effect an abandonment of it in whole or in part, unless such executory agreement is in writing and signed by the party against whom enforcement of the change, modification, discharge or abandonment is sought.

**End of Term:** 21. Upon the expiration or other termination of the term of this lease, Tenant shall quit and surrender to Owner the demised premises, "broom-clean", in good order and condition, ordinary wear excepted, and Tenant shall remove all its property. Tenant's obligation to observe or perform this covenant shall survive the expiration or other termination of this lease. If the last day of the term of this lease or any renewal thereof, falls on Sunday, this lease shall expire at noon on the preceding Saturday, unless it be a legal holiday, in which case it shall expire at noon on the preceding business day.

**Quiet Enjoyment:** 22. Owner covenants and agrees with Tenant that upon Tenant paying the rent and additional rent and observing and performing all the terms, covenants and conditions, on Tenant's part to be observed and performed, Tenant may peaceably and quietly enjoy the premises hereby demised, subject, nevertheless, to the terms and conditions of this lease including, but not limited to, Article 33 hereof and to the ground leases, underlying leases and mortgages hereinbefore mentioned.

**Failure to Give Possession:** 23. If Owner is unable to give possession of the demised premises on the date of the commencement of the term hereof, because of the holding-over or retention of possession of any tenant, undertenant or occupants, or if the demised premises are located in a building being constructed, because such building has not been sufficiently completed

SEE RIDER ATTACHED HERETO AND MADE A PART HEREOF

to make the demised premises ready for occupancy, or because of the fact that a certificate of occupancy has not been procured, or for any other reason, Owner shall not be subject to any liability for failure to give possession on said date and the validity of the lease shall not be impaired under such circumstances, nor shall the same be construed in any wise to extend the term of this lease, but the rent payable hereunder shall be abated (provided Tenant is not responsible for the inability to obtain possession or complete construction) until after Owner shall have given Tenant written notice that the Owner is able to deliver possession in the condition required by this lease. If permission is given to Tenant to enter into the possession of the demised premises or to occupy premises other than the demised premises prior to the date specified as the commencement of the term of this lease, Tenant covenants and agrees that such possession and/or occupancy shall be deemed to be under all the terms, covenants, conditions and provisions of this lease, except the obligation to pay the fixed annual rent set forth in page one of this lease. The provisions of this article are intended to constitute "an express provision to the contrary" within the meaning of Section 223-a of the New York Real Property Law.

**No Waiver:** 24. The failure of Owner to seek redress for violation of, or to insist upon the strict performance of any covenant or condition of this lease or of any of the Rules or Regulations set forth or hereafter adopted by Owner, shall not prevent a subsequent act which would have originally constituted a violation from having all the force and effect of an original violation. The receipt by Owner of rent and/or additional rent with knowledge of the breach of any covenant of this lease shall not be deemed a waiver of such breach, and no provision of this lease shall be deemed to have been waived by Owner unless such waiver be in writing signed by Owner. No payment by Tenant or receipt by Owner of a lesser amount than the monthly rent herein stipulated shall be deemed to be other than on account of the earliest stipulated rent, nor shall any endorsement or statement of any check or any letter accompanying any check or payment as rent be deemed an accord and satisfaction, and Owner may accept such check or payment without prejudice to Owner's right to recover the balance of such rent or pursue any other remedy in this lease provided. No act or thing done by Owner or Owner's agents during the term hereby demised shall be deemed in acceptance of a surrender of the demised premises and no agreement to accept such surrender shall be valid unless in writing signed by Owner. No employee of Owner or Owner's agent shall have any power to accept the keys of the demised premises prior to the termination of the lease, and the delivery of keys to any such agent or employee shall not operate as a termination of the lease or a surrender of the demised premises.

**Waiver of Trial by Jury:** 25. It is mutually agreed by and between Owner and Tenant that the respective parties hereto shall and they hereby do waive trial by jury in any action, proceeding or counterclaim brought by either of the parties hereto against the other (except for personal injury or property damage) on any matters whatsoever arising out of, or in any way connected with, this lease, the relationship of Owner and Tenant, Tenant's use of or occupancy of the demised premises, and any emergency statutory or any other statutory remedy. It is further mutually agreed that in the event Owner commences any proceeding or action for possession, including a summary proceeding for possession of the demised premises, Tenant will not interpose any counterclaim of whatever nature or description in any such proceeding, including a counterclaim under Article 4, except for statutory mandatory counterclaims.

**Inability to Perform:** 26. This lease and the obligation of Tenant to pay rent hereunder and perform all of the other covenants and agreements hereunder on part of Tenant to be performed shall in no wise be affected, impaired or excused because Owner is unable to fulfill any of its obligations under this lease, or to supply, or is delayed in supplying, any service expressly or impliedly to be supplied, or is unable to make, or is delayed in making, any repair, additions, alterations or decorations, or is unable to supply, or is delayed in supplying, any equipment, fixtures or other materials, if Owner is prevented or delayed from so doing by reason of strike or labor troubles, government preemption or restrictions, or by reason of any rule, order or regulation of any department or subdivision thereof of any government agency, or by reason of the conditions of which have been or are affected, either directly or indirectly, by war or other emergency, or when, in the judgement of Owner, temporary interruption of such services is necessary by reason of accident, mechanical breakdown, or to make repairs, alterations or improvements.

**Bills and Notices:** 27. Except as otherwise in this lease provided, a bill, statement, notice or communication which Owner may desire or be required to give to Tenant, shall be deemed sufficiently given or rendered if, in writing, delivered to Tenant personally or sent by registered or certified mail addressed to Tenant at the building of which the demised premises form a part, or at the last known residence address or business address of Tenant, or left at any of the aforesaid premises addressed to Tenant, and the time of the rendition of such bill or statement and of the giving of such notice or communication shall be deemed to be the time when the same is delivered to Tenant, mailed, or left at the premises as herein provided. Any notice by Tenant to Owner must be served by registered or certified mail addressed to Owner at the address first hereinabove given or at such other address as Owner shall designate by written notice.

**Water Charges:** 28. If Tenant requires, uses or consumes water for any purpose ~~in addition to~~ including ordinary lavatory purposes (of which fact Tenant constitutes Owner to be the sole judge) Owner may install a water meter and thereby measure Tenant's water consumption for all purposes. Tenant shall pay Owner for the cost of the meter and the cost of the installation thereof, and throughout the duration of Tenant's occupancy Tenant shall keep said meter and installation equipment in good working order and repair at Tenant's own cost and expense. Tenant agrees to pay for water consumed, as shown on said meter, as and when bills are rendered. Tenant covenants and agrees to pay the sewer rent, charge or any other tax, rent, levy or charge which now or hereafter is assessed, imposed or a lien upon the demised premises or the realty of which they are part pursuant to law, order or regulation made or issued in connection with the use, consumption, maintenance or supply of water, water system or sewage or sewage connection or system. The bill rendered by Owner shall be payable by Tenant as additional rent. If the building or the demised premises, or any part thereof, be supplied with water through a meter through which water is also supplied to other premises, Tenant shall pay to Owner as additional rent, on the first day of each month, % ($ ) of the total meter charges, as Tenant's portion. Independently of, and in addition to, any of the remedies reserved to Owner hereinabove or elsewhere in this lease, Owner may sue for and collect any monies to be paid by Tenant or paid by Owner for any of the reasons or purposes hereinabove set forth.

**Sprinklers:** 29. Anything elsewhere in this lease to the contrary notwithstanding, if the New York Board of Fire Underwriters or the Insurance Services Office, or any bureau, department or official of the federal, state or city government, require or recommend the installation of a sprinkler system or that any changes, modifications, alterations, or additional sprinkler heads or other equipment be made or supplied in an existing sprinkler system by reason of Tenant's business, or the location of partitions, trade fixtures, or other contents of the demised premises, or for any other reason, or if any such sprinkler system installations, changes, modifications, alterations, additional sprinkler heads or other such equipment, become necessary to prevent the imposition of a penalty or charge against the full allowance for a sprinkler system in the fire insurance rate set by any said Exchange or by any fire insurance company, Tenant shall, at Tenant's expense, promptly make such sprinkler system installations, changes, modifications, alterations, and supply additional sprinkler heads or other equipment as required, whether the work involved shall be structural or non-structural in nature. Tenant shall pay to Owner as additional rent the sum of $ , on the first day of each month during the term of this lease, as Tenant's portion of the contract price for sprinkler supervisory service.

**Elevators, Heat, Cleaning:** 30. ~~As long as Tenant is not in default under any of the covenants of this lease beyond the applicable grace period provided in this lease for the curing of such defaults, Owner shall, if and insofar as existing facilities permit, furnish heat to the demised premises, when and as required by law, on business days from 8:00 a.m. to 6:00 p.m. and on Saturdays from 8:00 a.m. to 1:00 p.m.~~ Tenant shall at Tenant's expense, keep the demised premises clean and in order, to the satisfaction to Owner, and if the demised premises are situated on the street floor, Tenant shall, at Tenant's own expense, make all repairs and replacements to the sidewalks and curbs adjacent thereto, and keep said sidewalks and curbs free from snow, ice, dirt and rubbish. Tenant shall pay to Owner the cost of removal of any of Tenant's refuse and rubbish from the building. Bills for the same shall be rendered by Owner to Tenant at such times as Owner may elect, and shall be due and payable when rendered, and the amount of such bills shall be deemed to be, and be paid as, additional rent. Tenant shall, however, have the option of independently contracting for the removal of such rubbish and refuse in the event that Tenant does not wish to have same done by employees of Owner. Under such circumstances, however, the removal of such refuse and rubbish by others shall be subject to such rules and regulations as, in the judgment of Owner, are necessary for the proper operation of the building.

**Security:** 31. Tenant has deposited with Owner the sum of $ as security for the faithful performance and observance by Tenant of the terms, provisions and conditions of this lease; it is agreed that in the event Tenant defaults in respect of any of the terms, provisions and conditions of this lease, including, but not limited to, the payment of rent and additional rent, Owner may use, apply or retain the whole or any part of the security so deposited to the extent required for the payment of any rent and additional rent, or any other sum as to which Tenant is in default, or for any sum which Owner may expend or may be required to expend by reason of Tenant's default in respect of any of the terms, covenants and conditions of this lease, including but not limited to, any damages or deficiency in the re-letting of the demised premises, whether such damages or deficiency accrued before or after summary proceedings or other re-entry by Owner. In the event that Tenant shall fully and faithfully comply with all of the terms, provisions, covenants and conditions of this lease, the security shall be returned to Tenant after the date fixed as the end of the lease and after delivery of entire possession of the demised premises to Owner. In the event of a sale of the land and building or leasing of the building, of which the demised premises form a part, Owner shall have the right to transfer the security to the vendee or lessee and Owner shall thereupon be released by Tenant from all liability for the return of such security, and Tenant agrees to look to the new Owner solely for the return of said security; and it is agreed that the provisions hereof shall apply to every transfer or assignment made of the security to a new Owner. Tenant further covenants that it will not assign or encumber or attempt to assign or encumber the monies deposited herein as security, and that neither Owner nor its successors or assigns shall be bound by any such assignment, encumbrance, attempted assignment or attempted encumbrance.

**Captions:** 32. The Captions are inserted only as a matter of convenience and for reference and in no way define, limit or describe the scope of this lease nor the intent of any provision thereof.

**Definitions:** 33. The term "Owner" as used in this lease means only the Owner, or the mortgagee in possession, for the time being of the land and building (or the Owner of a lease of the building or of the land and building) of which the demised premises form a part, so that in the event of any sale or sales of said land and building or of said lease, or in the event of a lease of said building, or of the land and building, the said Owner shall be and hereby is entirely freed and relieved of all covenants and obligations of Owner hereunder, and it shall be deemed and construed without further agreement between the parties of their successors in interest, or between the parties and the purchaser, at any such sale, or the said lessee of the building, or of the land and building, that the purchaser or the lessee of the building has assumed and agreed to carry out any and all covenants and obligations of Owner hereunder. The words "re-enter" and "re-entry" as used in this lease are not restricted to their technical legal meaning. The term "business days" as used in this lease shall exclude Saturdays, Sundays and all days designated as holidays by the applicable building service union employees service contract or by the applicable Operating

Space to be filled in or deleted.

SEE RIDER ATTACHED HERETO AND MADE A PART HEREOF

Engineers contract with respect to HVAC service. Wherever it is expressly provided in this lease that consent shall not be unreasonably withheld, such consent shall not be unreasonably delayed.

**Adjacent Excavation-Shoring:** 34. If an excavation shall be made upon land adjacent to the demised premises, or shall be authorized to be made, Tenant shall afford to the person causing or authorized to cause such excavation, a license to enter upon the demised premises for the purpose of doing such work, as said person shall deem necessary, to preserve the wall or the building of which the demised premises form a part from injury or damage and to support the same by proper foundations, without any claim for damages or indemnity against Owner, or diminution or abatement of rent.

**Rules and Regulations:** 35. Tenant and Tenant's servants, employees, agents, visitors, and licensees shall observe faithfully, and comply strictly with the Rules and Regulations and such other and further reasonable Rules and Regulations as Owner or Owner's agents may from time to time adopt. Notice of any additional rules or regulations shall be given in such manner as Owner may elect. In case Tenant disputes the reasonableness of any additional Rule or Regulation hereafter made or adopted by Owner or Owner's agents, the parties hereto agree to submit the question of the reasonableness of such Rule or Regulation for decision to the New York office of the American Arbitration Association, whose determination shall be final and conclusive upon the parties hereto. The right to dispute the reasonableness of any additional Rule or Regulation upon Tenant's part shall be deemed waived unless the same shall be asserted by service of a notice, in writing, upon Owner, within fifteen (15) days after the giving of notice thereof. Nothing in this lease contained shall be construed to impose upon Owner any duty or obligation to enforce the Rules and Regulations or terms, covenants or conditions in any other lease, as against any other tenant, and Owner shall not be liable to Tenant for violation of the same by any other tenant, its servants, employees, agents, visitors or licensees.

**Glass:** 36. Owner shall replace, at the expense of Tenant, any and all plate and other glass damaged or broken from any cause whatsoever in and about the demised premises. Owner may insure, and keep insured, at Tenant's expense, all plate and other glass in the demised premises for and in the name of Owner. Bills for the premiums therefor shall be rendered by Owner to Tenant at such times as Owner may elect, and shall be due from, and payable by, Tenant when rendered, and the amount thereof shall be deemed to be, and be paid as, additional rent.

**Pornographic Uses Prohibited:** 37. Tenant agrees that the value of the demised premises and the reputation of the Owner will be seriously injured if the demised premises are used for any obscene or pornographic purposes or any sort of commercial sex establishment. Tenant agrees that Tenant will not bring or permit any obscene or pornographic material on the demised premises, and shall not permit or conduct any obscene, nude, or semi-nude live performances on the demised premises, nor permit use of the demised premises for nude modeling, rap sessions, or as a so called rubber goods shop, or as a sex club of any sort, or as a "massage parlor." Tenant agrees further that Tenant will not permit any of these uses by any sublessee or assignee of the demised premises. This Article shall directly bind any successors in interest to the Tenant. Tenant agrees that if at any time Tenant violates any of the provisions of this Article, such violation shall be deemed a breach of a substantial obligation of the terms of this lease and objectionable conduct. Pornographic material is defined for purposes of this Article as any written or pictorial matter with prurient appeal, or any objects of instrument that are primarily concerned with lewd or prurient sexual activity. Obscene material is defined here as it is in Penal Law §235.00.

**Estoppel Certificate:** 38. Tenant, at any time, and from time to time, upon at least 10 days prior notice by Owner, shall execute, acknowledge and deliver to Owner, and/or to any other person, firm or corporation specified by Owner, a statement certifying that this lease is unmodified and in full force and effect (or, if there have been modifications, that the same is in full force and effect as modified and stating the modifications), stating the dates which the rent and additional rent have been paid, and stating whether or not there exists any defaults by Owner under this lease, and, if so, specifying each such default.

**Successors and Assigns:** 39. The covenants, conditions and agreements contained in this lease shall bind and inure to the benefit of Owner and Tenant and their respective heirs, distributees, executors, administrators, successors, and except as otherwise provided in this lease, their assigns. Tenant shall look only to Owner's estate and interest in the land and building for the satisfaction 5
of Tenant's remedies for the collection of a judgment (or other judicial process) against Owner in the event of any default by Owner hereunder, and no other property or assets of such Owner (or any partner, member, officer or director thereof, disclosed or undisclosed), shall be subject to levy, execution or other enforcement procedure for the satisfaction of Tenant's remedies under, or with respect to, this lease, the relationship of Owner and Tenant hereunder, or Tenant's use and occupancy of the demised premises.

**In Witness Whereof,** Owner and Tenant have respectively signed and sealed this lease as of the day and year first above written.

Witness for Owner: ......................................

403 LLC

......................................

By: ......................................

Witness for Tenant: ......................................

SWY Entertainments LLC

......................................

By: Wisam Assaedi Pres.

ACKNOWLEDGEMENT

STATE OF NEW YORK,

SS.:

COUNTY OF ________

On the ________ day of ________________ in the year __________, before me, the undersigned, a Notary Public in and for said State, personally appeared ______________________________, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

______________________________
NOTARY PUBLIC

SEE RIDER ATTACHED HERETO AND MADE A PART HEREOF

## GUARANTY

The undersigned Guarantor guarantees to Owner, Owner's successors and assigns, the full performance and observance of all the agreements to be performed and observed by Tenant in the attached lease, including the "Rules and Regulations" as therein provided, without requiring any notice to Guarantor of nonpayment, or nonperformance, or proof, or notice of demand, to hold the undersigned responsible under this guaranty, all of which the undersigned hereby expressly waives, and expressly agrees that the legality of this agreement and the agreements of the Guarantor under this agreement, shall not be ended, or changed by reason of the claims to Owner against Tenant of any of the rights or remedies given to Owner as agreed in the attached lease. The Guarantor further agrees that this guaranty shall remain and continue in full force and effect as to any renewal, change or extension of the lease. As a further inducement to Owner to make the lease, Owner and Guarantor agree that in any action or proceeding brought by either Owner or the Guarantor against the other on any matters concerning the lease or of this guaranty, that Owner and the undersigned shall and do waive trial by jury.

Dated: .............................................. in the year ..........

..............................................................
Guarantor

..............................................................
Witness

..............................................................
Guarantor's Residence

..............................................................
Business Address

..............................................................
Firm Name

STATE OF NEW YORK ) ss.:

COUNTY OF )

On the day of in the year before me, the undersigned, a Notary Pubic in and for said State, personally appeared personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

..............................................................
Notary

## IMPORTANT - PLEASE READ

### RULES AND REGULATIONS ATTACHED TO AND MADE A PART OF THIS LEASE IN ACCORDANCE WITH ARTICLE 35.

1. The sidewalks, entrances, driveways, passages, courts, elevators, vestibules, stairways, corridors or halls shall not be obstructed or encumbered by any Tenant or used for any purpose other than for ingress to and egress from the demised premises and for delivery of merchandise and equipment in a prompt and efficient manner using elevators and passageways designated for such delivery by Owner. There shall not be used in any space, or in the public hall of the building, either by any tenant or by jobbers, or others in the delivery or receipt of merchandise, any hand trucks except those equipped with rubber tires and safeguards.

2. If the demised premises are situated on the ground floor of the building, Tenant thereof shall further, at Tenant's expense, keep the sidewalks and curb in front of said premises clean and free from ice, snow, etc.

3. The water and wash closets and plumbing fixtures shall not be used for any purposes other than those for which they were designed or constructed.

4. Tenant shall not use, keep or permit to be used or kept, any foul or noxious gas or substance in the demised premises, or permit or suffer the demised premises to be occupied or used in a manner offensive or objectionable to Owner or other occupants of the building by reason of noise, odors and/or vibrations, or interfere in any way with other tenants or those having business therein.

5. No sign, advertisement, notice or other lettering shall be exhibited, inscribed, painted or affixed by Tenant on any part of the outside of the demised premises or the building, or on the inside of the demised premises if the same is visible from the outside of the demised premises, without the prior written consent of Owner, except that the name of Tenant may appear on the entrance door of the demised premises. In the event of the violation of the foregoing by Tenant, Owner may remove same without any liability and may charge the expense incurred by such removal to Tenant. Signs on interior doors and directory tablet shall be inscribed, painted or affixed for Tenant by Owner at the expense of Tenant, and shall be of a size, color and style acceptable to Owner.

6. Tenant shall not mark, paint, drill into, or in any way deface any part of the demised premises or the building of which they form a part. No boring, cutting or stringing of wires shall be permitted, except with the prior written consent of Owner, and as Owner may direct. Tenant shall not lay linoleum, or other similar floor covering, so that the same shall come in direct contact with the floor of the demised premises, and, if linoleum or other similar floor covering is desired to be used, an interlining of builder's deadening felt shall be first affixed to the floor, by a paste or other material, soluble in water, the use of cement or other similar adhesive material being expressly prohibited.

7. Freight, furniture, business equipment, merchandise and bulky matter of any description shall be delivered to and removed from the demised premises only on the freight elevators and through the service entrances and corridors, and only during hours and in a manner approved by Owner. Owner reserves the right to inspect all freight to be brought into the building and to exclude from the building all freight which violates any of these Rules and Regulations or the lease of which these Rules and Regulations are a part.

8. Owner reserves the right to exclude from the building between the hours of 6 P.M. and 8 A.M. and at all hours on Sundays, and holidays all persons who do not present a pass to the building signed by Owner. Owner will furnish passes to persons for whom Tenant requests same in writing. Tenant shall be responsible for all persons for whom it requests such pass, and shall be liable to Owner for all acts of such person.

9. Owner shall have the right to prohibit any advertising by Tenant which, in Owner's opinion, tends to impair the reputation of Owner or the building's desirability as a building for stores or offices, and upon written notice from Owner, Tenant shall refrain from or discontinue such advertising.

10. Tenant shall not bring or permit to be brought or kept in or on the demised premises, any inflammable, combustible, or explosive, or hazardous fluid, material, chemical or substance, or cause or permit any odors of cooking or other processes, or any unusual or other objectionable odors, to permeate in or emanate from the demised premises.

11. Tenant shall not place a load on any floor of the demised premises exceeding the floor load per square foot area which it was designed to carry and which is allowed by law. Owner reserves the right to prescribe the weight and position of all safes, business machines and mechanical equipment. Such installations shall be placed and maintained by Tenant at Tenant's expense in a setting sufficient in Owner's judgement to absorb and prevent vibration, noise and annoyance.

12. Refuse and Trash - Tenant covenants and agrees, at its sole cost and expense, to comply with all present and future laws, orders and regulations of all state, federal, municipal and local governments, departments, commissions and boards regarding the collection, sorting, separation and recycling of waste products, garbage, refuse and trash. Tenant shall pay all costs, expenses, fines, penalties or damages that may be imposed on Owner or Tenant by reason of Tenant's failure to comply with the provisions of this Building Rule 12, and, at Tenant's sole cost and expense, shall indemnify, defend and hold Owner harmless (including reasonable legal fees and expenses) from and against any actions, claims and suits arising from such non-compliance, utilizing counsel reasonably satisfactory to Owner.

Address

Premises

TO

STANDARD FORM OF

**Store Lease**

The Real Estate Board of New York, Inc.

©Copyright 1999. All rights Reserved.
Reproduction in whole or in part prohibited.

Dated in the year

Rent Per Year

Rent Per Month

Term
From
To

Drawn by ..............................

Checked by ..............................

Entered by ..............................

Approved by ..............................

**INSERTS BETWEEN 403 LLC, LANDLORD, AND SWY ENTERTAINMENTS LLC, TENANT, WITH RESPECT TO A CERTAIN GROUND FLOOR AND SECOND FLOOR SPACE IN THE BUILDING KNOWN AS 531 86TH STREET**

1. which shall not be unreasonably withheld for non-structural alterations, installations and improvements.

2. Either party

3. upon reasonable notice (which may be oral)

4. in compliance with applicable law

5. including rents received

RIDER TO LEASE
PREMISES: CERTAIN SPACE LOCATED AT
531 86TH STREET,
BROOKLYN, NEW YORK

Wherever the terms, covenants and conditions contained in the printed portion of the lease shall be in conflict with any of the terms, covenants and conditions in this Rider to Lease, the Rider to Lease shall prevail.

40. A. (i) Supplementing the preface of this Lease, the term of this Lease shall be for a term of approximately fifteen (15) years and three (3) months, to commence on the date that Landlord delivers a fully executed counterpart of this Lease and possession of the Demised Premises to Tenant with Landlord's Work (as hereinafter defined) Substantially Complete (the "Commencement Date") and to end on the last day of the fifteenth (15th) lease year, or until such term shall sooner cease and terminate as otherwise provided in this Lease. Landlord shall use good faith efforts to Substantially Complete Landlord's Work within 210 days following the receipt of all permits and approvals required to complete Landlords Work , subject to extensions for force majeure or other delays beyond Landlord's reasonable control but the failure of Landlord to Substantially Complete Landlord's Work by any specific date shall not affect the rights and obligation of the parties under this Lease provided however in no event shall the Commencement Date occur prior to the Substantial Completion of Landlord's Work.

(ii) The term "lease year" shall mean for the first lease year, the period from the Commencement Date until the last day of the month immediately prior to the month in which the twelve month anniversary of the Rent Commencement Date (as hereinafter defined) occurs, and for each subsequent lease year, each subsequent period of twelve months.

(iii) "Substantially Complete" as used herein shall mean that all of Landlord's Work has been completed except for minor, insubstantial details of construction, decoration or mechanical adjustment (i.e., "punch list items") which do not materially interfere with Tenant's access to the Demised Premises or its ability to conduct its business therein or to perform its initial alteration work therein.

B. The Tenant shall pay the following "Base" rent on the first day of each and every month in advance:

$1,050,000.00 per annum ($87,500.00 per month) during the first lease year;

$1,125,000.00 per annum ($93,750.00 per month) during the second lease year;

$1,200,000.00 per annum ($100,000.00 per month) during the third lease year;

$1,236,000.00 per annum ($103,000.00 per month) during the fourth lease year;

$1,273,080.00 per annum ($106,090.00 per month) during the fifth lease year;

$1,311,272.40 per annum ($109,272.70 per month) during the sixth lease year;

$1,350,610.57 per annum ($112,550.88 per month) during the seventh lease year;

$1,391,128.89 per annum ($115,927.41 per month) during the eighth lease year;

$1,432,862.76 per annum ($119,405.23 per month) during the ninth lease year;

$1,475,848.64 per annum ($122,987.39 per month) during the tenth lease year;

$1,520,124.10 per annum ($126,677.01 per month) during the eleventh lease year;

$1,565,727.82 per annum ($130,477.32 per month) during the twelfth lease year;

$1,612,699.66 per annum ($134,391.64 per month) during the thirteenth lease year;

$1,661,080.64 per annum ($138,423.39 per month) during the fourteenth lease year; and

$1,710,913.06 per annum ($142,576.09 per month) during the fifteenth lease year.

If the obligation to pay rent commences on any day other than the first day of a calendar month, then the Base rent for such first month shall be prorated on a per diem basis. At Landlord's option, all Base rent and Additional Rent due under this Lease shall be paid via electronic ACH transfer to the account of Landlord.

C. Notwithstanding anything to the contrary hereinabove contained, so long as Tenant shall have duly kept and performed all of the terms, conditions, covenants, provisions, and agreements to be kept and performed by Tenant under this Lease, Tenant shall be permitted to occupy the Demised Premises for the period commencing upon the Commencement Date and ending upon the earlier of (a) the ninetieth (90th) day following the Commencement Date, and (b) the date Tenant opens for business in the Demised Premises (the "Rent Commencement Date"), without being obligated to pay the monthly installment of fixed annual rent, but subject to all other terms and conditions of this Lease, including, but not limited to, the obligation to pay for any and all utilities utilized in or furnished to the Demised Premises and other Additional Rent during such period.

D. Anything contained herein to the contrary notwithstanding, if Tenant, at any time during the term of this Lease after Tenant has been granted all or a portion of the rent credit described in section 40C, breaches any covenant, condition or provision of this Lease and fails to cure such breach within the applicable notice and cure period after Landlord's notice of such default, then, in addition to all other damages and remedies herein provided and to which Landlord may otherwise be entitled, Landlord shall also be entitled to the repayment of any rent credit theretofore enjoyed by Tenant, which sum shall be deemed Additional Rent hereunder and shall be due upon demand by Landlord and, Tenant shall not be entitled to any further rent credit described in Article 40C. The obligation of Tenant to pay such Additional Rent (or damages) to Landlord shall survive the expiration or sooner termination of the term of this Lease.

E. Whenever Tenant shall submit to Landlord any plan, agreement or other document for Landlord's consent or approval, Tenant agrees to pay Landlord, as Additional Rent, on demand, the actual out-of-pocket costs and expenses incurred by Landlord for review of same, including the services of any architect, engineer, attorney or consultant employed by Landlord to review said plan, agreement or document. Landlord shall provide copies of the invoice, receipt or other evidence of such out-of-pocket costs and expenses in connection with Landlord's demand for reimbursement pursuant to this subsection.

F. Tenant may use the Demised Premises solely as (i) an indoor entertainment park with incidental sales of merchandise and food/beverage service, (ii) a gym including the sale sporting good and merchandise (collectively, the "Permitted Use") , and for no other use or purpose. If any governmental license or permit shall be required for the proper and lawful conduct of Tenant's business or other activity carried on in the Demised Premises, then Tenant, at Tenant's expense, shall duly procure all necessary licenses or permits from every governmental authority, federal, state, city and county having jurisdiction over the Demised Premises, for the business to be conducted by Tenant and thereafter maintain such licenses or permits and submit the same for inspection by Landlord. Tenant, at Tenant's expense, shall, at all times, comply with the requirements of each such license or permit. Tenant shall, at its own cost and expense, make all necessary repairs for the granting of such permits.

41. (A) As used in this Lease:

(i) "Taxes" shall mean the real estate taxes and assessments and special assessments, including, business improvement district ("BID") and/or special assessment district ("SAD") charges imposed upon the Demised Premises pursuant to the Prime Lease (as hereinafter defined). If at any time during the term of this Lease the methods of taxation prevailing at the commencement of the term hereof shall be altered so that in lieu of, or as an addition to or as a substitute for the whole or any part of the taxes, assessments, levies, impositions or charges now levied, assessed or imposed on real estate and the improvements thereof, there shall be levied,

assessed and imposed (a) a tax, assessment, levy or otherwise on the rents received therefrom, or (b) a license fee measured by the rent payable by Tenant to Landlord, or (c) any other such additional or substitute tax, assessment, levy, imposition or charge, then all such taxes, assessments, levies, impositions or charges or the part thereof so measured or based shall be deemed to be included within the term "Taxes" for the purpose hereof. The term "Taxes" shall not include the benefit of any exemption/abatement benefits that reduce the real estate taxes that may be due and payable.

(ii) "Tax Year" shall mean the tax year commencing on July 1 and ending on June 30.

(iii) "Base Tax" shall mean Taxes for the period beginning July 1, 2023 and ending June 30, 2024.

(iv) "Tenant's Share" shall be one hundred percent (100%).

(B) (i) If the Taxes for any Tax Year shall be more than the Base Tax, Tenant shall pay as Additional Rent for such Tax Year an amount equal to Tenant's Share of the amount by which the Taxes for such Tax Year are greater than the Base Tax (the amount payable by Tenant is hereinafter called the "Tax Payment"). The Tax Payment shall be prorated, if necessary, to correspond with that portion of a Tax Year occurring within the term of this Lease. The Tax Payment shall be payable by Tenant within ten (10) days after receipt of a demand from Landlord therefor. In addition to and supplementing the foregoing, Landlord may estimate the amount of the Tax Payment that will be due from Tenant to Landlord and notify Tenant of the amount so estimated. Thereupon, Tenant shall pay the amount so estimated to Landlord, in equal monthly installments, in advance, on the first day of each calendar month during the applicable Tax Year. Within sixty (60) days after the end of each Tax Year, Landlord shall deliver a copy to Tenant of either (i) a bill from Master Landlord (as hereinafter defined) or (ii) all tax bills for such Tax Year, together with a statement showing the amount of Tenant's Tax Payment. If the amount of such monthly payments paid by Tenant exceeds the actual amount due, the overpayment shall be credited on Tenant's next succeeding payment or, during the last year of the term, Landlord will refund such excess to Tenant within thirty (30) days following the expiration of the term, if Tenant is not in default hereunder. If the amount of such monthly payments paid by Tenant shall be less than the actual amount due, then Tenant shall pay to Landlord the difference between the amount paid by Tenant and the actual amount due within ten (10) days after demand from Landlord.

(ii) In the event the Base Tax is reduced as a result of an appropriate proceeding, Landlord shall have the right to adjust the amount of Tax Payment due from Tenant for any Tax Year in which Tenant is or was obligated to pay a Tax Payment hereunder, and Tenant agrees to pay the amount of said adjustment on the next rental installment day immediately following receipt of a rent statement from Landlord setting forth the amount of said adjustment.

(C) Tenant shall have no right to institute a tax reduction or other proceeding to reduce the Taxes.

(D) With respect to any period at the expiration of the term of this Lease that shall constitute a partial Tax Year, Landlord's statement shall apportion the amount of the Additional Rent due hereunder. The obligation of Tenant in respect to such Additional Rent applicable for the last year of the term of this Lease or part thereof shall survive the expiration of the term of this Lease.

(E) Notwithstanding the fact that the increase in rent is measured by an increase in Taxes, such increase is Additional Rent and shall be paid by Tenant as provided herein regardless of the fact that Tenant may be exempt, in whole or in part, from the payment of any taxes by reason of Tenant's diplomatic or other tax-exempt status or for any other reason whatsoever.

(F) The benefit of any discount for any early payment or prepayment of Taxes shall accrue solely to the benefit of Landlord, and such benefits shall not be subtracted from the Taxes payable for any comparative year.

(G) The statements of the Taxes or a bill from Master Landlord for Taxes to be furnished by Landlord as provided above shall constitute a final determination as between Landlord and Tenant of the Taxes for the periods represented thereby, unless Tenant within thirty (30) days after they are furnished shall in writing challenge their accuracy or their appropriateness. If Tenant

shall dispute said statements, then, pending the resolution of such dispute, Tenant shall pay the Additional Rent to Landlord in accordance with the statements furnished by Landlord.

42. Wherever in this Lease there is reference to obligations and covenants of Landlord, it is understood that any Tenant pursuant to this Lease shall look solely to the real property (and the rents derived therefrom) being let hereunder for enforcement thereof and that no personal liability on behalf of the Landlord or assigns shall accrue in favor of the Tenant hereunder. The Tenant waives the right to seek any monetary damages or other relief personally against the Landlord hereunder.

43. A. Supplementing printed Article 8 hereof, Tenant assumes the liability for damage to its improvements, fixtures, partitions, equipment and personal property therein, and all appurtenances thereto, regardless of the cause thereof. Except as otherwise provided herein, Tenant expressly waives and releases Landlord, Landlord's managing agent, if any, ("Managing Agent") and Master Landlord from all claims against Landlord, Managing Agent and Master Landlord and agrees to hold Landlord, Managing Agent and Master Landlord harmless for any loss resulting from damage or loss to Tenant's goods, wares, merchandise, inventories, fixtures and/or equipment of any invitee, subsidiary or affiliate of tenant, vendor or contractor in, upon or about the Demised Premises regardless of the cause.

Tenant shall secure, pay for and maintain, at its own expense, the following insurance policies in full force and effect during the term of the agreement:

(i) Property Insurance: Replacement cost insurance on Tenant's machinery, equipment, furniture & fixtures, goods, wares, merchandise, improvements/betterments and Business Interruption/Extra Expense in sufficient amounts against damage caused by fire and all other perils covered by a standard All Risk Insurance Policy. Tenant agrees to waive its right of subrogation against Landlord, Managing Agent and Master Landlord and shall obtain a waiver from its insurance company releasing the carrier's subrogation rights against Landlord, Managing Agent and Master Landlord.

(ii) Workers Compensation affording coverage under the Workers Compensation laws of the State of New York and Employers Liability coverage subject to a limit of no less than $500,000 each employee, $500,000 each accident and $500,000 policy limit.

(iii) Commercial General Liability Insurance for limits of $3,000,000 per occurrence Bodily Injury and Property Damage, $2,000,000 per occurrence Personal & Advertising Injury, $1,000,000 Products Liability and Completed Operations, $1,000,000 Fire Damage Legal Liability and $2,000,000 General Aggregate limit per location. The policy shall be written on an occurrence basis. Any deductible shall be the responsibility of the Tenant. The policy shall not contain exclusions relating to: (a) contractual liability, (b) independent contractors, (c) gravity related injuries, or (d) injuries sustained by an employee of an insured or any insured.

Additional Insureds – Tenant's Commercial General Liability policy shall be endorsed to name Landlord, Managing Agent, Master Landlord, Landlord's lender (if required) and their subsidiaries, successors and affiliates and all other entities that may be reasonably required (hereinafter referred to as "Additional Insureds") as Additional Insured, utilizing ISO Form CG2026 or its equivalent. Definition of Additional Insured shall include all officers, directors, partners, members, employees, agents and designees. Further, the insurance policy shall provide coverage for the Additional Insured on a primary and non-contributory basis irrespective of any other insurance available to Additional Insureds, whether collectible or not.

(iv) Umbrella Liability Insurance for the total limit purchased by the Tenant but not less than a $3,000,000 limit providing excess coverage over all limits and coverage noted in paragraphs (ii) and (iii) above. This policy shall be written on an "occurrence" basis and shall cover the same Additional Insureds as defined in Section (iii) above. Coverage for Additional Insureds shall apply on a primary and non-contributory basis irrespective of any other insurance available to Additional Insureds, whether collectible or not.

All policies noted in above shall be written with insurance companies permitted to do business in the State of New York and rated no lower than A10 in the most current edition of A.M. Best's Property-Casualty Key Rating Guide.

B. All policies shall be endorsed to provide that in the event of cancellation, non-renewal or material modification, Landlord and Managing Agent shall receive thirty (30) days written notice thereof. If unable to endorse any policy required hereunder, Tenant shall be responsible for providing notice to Landlord.

Tenant shall furnish Landlord and Managing Agent with Certificates of Insurance and upon Landlords request, complete copies of all policies including all endorsements attached thereto evidencing compliance with all insurance provisions noted above no later than five (5) days prior to the inception of this Lease; and five (5) days prior to the expiration or anniversary of the respective policy terms.

All Certificates of Insurance or policy termination notices should be delivered to:

403 LLC
9322 3rd Avenue
Suite 502
Brooklyn, New York 11209
Attention: Tim Ziss

C. To the fullest extent permitted by law, the Tenant shall be solely responsible for and shall defend, indemnify and hold harmless the Additional Insureds, as required in Section 43(A) above, from and against any and all claims, loss, (including attorney's fees, witnesses' fees and all court costs), damages, expense and liability (including statutory liability), resulting from injury and/or death of any person or damage to or loss of any property arising out of Tenant's operation, use or occupancy of the Demised Premises or any portion thereof, or breach of this Lease. The foregoing indemnity shall include injury or death of any employee of the Tenant, its invitees, contractors and subcontractors and shall not be limited in any way by an amount or type of damages, compensation or benefits payable under any applicable Workers Compensation, Disability Benefits or other similar employee benefits acts. Tenant's Liability under this indemnification shall not be limited to required limits in subsections 43(A)(ii), (iii), and (iv) above.

D. All policies of insurance required to be procured by Tenant shall be written as primary policies, not contributing with, nor in excess of any coverage that Landlord may carry. Tenant shall be solely responsible for the payment of all premiums, notwithstanding that Landlord shall be named as an additional insured.

E. Tenant shall cause its contractors and subcontractors to secure and keep in effect during the performance of any alterations, improvements or work in or at the Demised Premises, at contractors sole cost and expense coverage in the form attached hereto as Exhibit "B". Further, Tenant shall have contractor sign Exhibit "B" and submit same to Landlord prior to commencing any work in or at the Demised Premises.

44. Tenant represents and warrants that it neither consulted nor negotiated with any broker or finder (collectively, a "Broker") with regard to the Demised Premises. Tenant agrees to indemnify, defend and save Landlord harmless from and against any claims for fees or commissions from anyone claiming a commission in connection with the Demised Premises or this Lease. Tenant shall be responsible for the payment of any commission due to any Broker pursuant to a separate agreement between such broker and Tenant.

45. Tenant agrees throughout the term of this Lease to illuminate the window of the Demised Premises with electric lights from sunset to sunrise subject to the reasonable approval of Landlord and in compliance with all applicable laws. If Tenant is to provide protective gates in front of the store, the design for same shall be subject to the reasonable approval of Landlord. Such gates shall be 100% open wire type and placed inside the store. Any electrical signs which may be permitted by Landlord are to be displayed inside the store. Any store front to be erected shall permit such installations to be possible.

46. Tenant agrees to comply with any and all laws, ordinances or orders of any and all municipal state and federal authorities, boards, commissions, and other governmental agencies with respect to the Demised Premises. By referring to such laws, ordinances or orders, it is intended to mean such laws, ordinances, etc., as may affect the use of the Demised Premises for the purposes

specified herein. It is further agreed between the parties that the Tenant shall not during the term of this Lease use the Demised Premises, or any part thereof, or allow them to be used for any business which shall be deemed extra-hazardous by the New York Board of Fire Underwriters or any similar organization having jurisdiction (the "Board"). In any event, should the fire insurance rates or premiums to the Landlord be increased by reason of the operation of the Tenant's business, as determined by the Board, then in that event all such increased premiums or rates shall be paid for by the Tenant to the Landlord upon notice to the Tenant of such increase an shall be deemed considered Additional Rent. The Tenant further agrees to comply with and immediately execute the rules, orders, regulations and recommendations, whenever issued, of the Board for the prevention of fires, or the orders or recommendations whenever made or given of any insurance company which insures or participates in insuring the Demised Premises against loss by fire.

47. A. All electricity and gas consumed in the Demised Premises by Tenant will be metered by separate meters or submeters maintained by Tenant, at Tenant's own cost and expense. All water consumed in the Demised Premises will be measured by a submeter maintained by Tenant, at Tenant's sole cost and expense. Tenant shall pay for all water, electricity and other utilities used by Tenant. Landlord shall deliver the existing electric meter, gas meter and water submeter in working order and following the Commencement Date Tenant shall be responsible for all maintenance, repair and replacement costs related to such meters. Tenant agrees to use such electrical provider as designated by Landlord from time to time. Tenant acknowledges and agrees that Landlord shall have no obligation to furnish to the Demised Premises, electricity, gas and/or any other utilities or services consumed in the Demised Premises. Payment for such utilities consumed at the Demised Premises shall be made by Tenant directly to the public utility (or utilities) supplying same unless otherwise instructed by Landlord. Tenant hereby agrees to pay and discharge all charges, claims and liens incurred during the term of this Lease by reason of the consumption of water, gas, electricity or other utilities and the maintenance of equipment incidental to the consumption of all such utilities at the Demised Premises. Water shall be provided to Tenant pursuant to Article 28 of the Lease, however, Tenant agrees that, Tenant shall maintain and supply to the Demised Premises, at its sole cost and expense, hot water and the necessary equipment therefor. Tenant acknowledges that all utilities are provided by third parties and not Landlord.

B. Tenant shall install measure Tenant's consumption of water for all purposes. Tenant shall (i) keep said submeter(s) and installation equipment in good working order and repair at Tenant's sole cost and expense, and (ii) pay Landlord, as Additional Rent, Landlord's cost for the water consumed within the Demised Premises, as shown on said submeters plus the reasonable cost to read the submeter. When more than one submeter measures the water service to the Demised Premises, the service rendered through each submeter shall be separately computed and billed in accordance with the charges, taxes, terms and rates stated herein. Bills may be rendered monthly or at such times as Landlord may elect and shall be paid within ten (10) days of the date such bills are rendered.

C. Notwithstanding anything in this Lease to the contrary, Landlord shall not supply heat or air conditioning to the Demised Premises. Tenant acknowledges and agrees that the heat and air conditioning unit and related equipment (collectively the "HVAC Unit") presently serving the Demised Premises are Landlord's property, however, Tenant shall be permitted to use such HVAC Unit and Tenant shall nevertheless be responsible for all repairs, maintenance and/or replacement of the HVAC Unit provided that Landlord shall deliver the HVAC Unit on the Commencement Date in working order. Tenant shall have control of the HVAC Unit and shall be permitted to use same 24 hours a day, 7 days a week. Tenant agrees that it shall, at Tenant's sole cost and expense, obtain and keep in full force and effect a comprehensive maintenance and repair contract which shall include preventive maintenance and parts replacements whether ordinary or extraordinary in nature (the "Service Contract") for all or any part of the HVAC Unit with a company reasonably approved by Landlord. Such Service Contract, and any renewal or amendments thereto, must be submitted to Landlord for its prior approval which shall not be unreasonably withheld. Not less than thirty (30) days prior to the expiration of the Service Contract, evidence of the renewal of such Service Contract, together with evidence of the payment of premiums for the renewal period or a new Service Contract, as the case may be, shall be delivered to the Landlord. On Tenant's default in obtaining or delivering the Service Contract or failure to pay the charges therefor, Landlord may secure or pay the charges for the Service Contract and charge the Tenant as Additional Rent therefor. Tenant shall be responsible for all utilities associated with the use of all or any part of the HVAC Unit. At the expiration or sooner termination

of the term of this Lease, except as Landlord may elect otherwise under Article 3 hereof, all HVAC Unit equipment and duct work, shall be and become the property of Landlord and shall remain upon and be surrendered with the Demised Premises. Any repairs, restoration or replacements of all or any part of the HVAC Unit and related equipment shall be in quality and class equal to the original work of installations.

48. A. As a material inducement for Landlord to enter into this Lease, Tenant hereby covenants and agrees that Tenant will, at Tenant's own cost and expense, and in a good and workmanlike manner, make and complete all such alterations, decorations and improvements as are needed or desirable to create and/or maintain a high quality establishment in and to the Demised Premises (the "Tenant's Initial Work"). All work and installations including, but not limited to Tenant's Initial Work shall be subject to Landlord's prior written approval and shall be in accordance with (i) the provisions of this Lease including, without limitation, Article 3 and this Article 48, (ii) plans and specifications approved by Landlord and (iii) all governmental laws, regulations and requirements. Tenant shall be responsible at Tenant's sole cost and expense to obtain all required governmental permits and approvals prior to commencing all work and installations, including but not limited to Tenant's Initial Work, in the Demised Premises.

B. Prior to commencing any work at the Demised Premises (including the Tenant's Initial Work) which cost more than $10,000 in any twelve month period, Tenant, at its own cost and expense, shall deliver to Landlord security satisfactory to Landlord, guaranteeing the performance thereof and payment therefor within a reasonable time, free and clear of all liens, encumbrances, chattel mortgages, conditional bills of sale and other charges, and in accordance with the plans and specifications approved by Landlord. Such security shall not be returned to Tenant if Tenant is in default of any of the terms, covenants, conditions or provisions of this Lease, and shall not be returned until the occurrence of all of the following: (i) Tenant is open for business at the Demised Premises; (ii) Tenant has completed the Tenant's Initial Work in accordance with the plans and specifications approved by Landlord and otherwise in accordance with the provisions of this Lease; (iii) Tenant provides a certification from Tenant's architect certifying: (a) that Tenant has completed the Tenant's Initial Work in accordance with the plans and specifications approved by Landlord and otherwise in accordance with the provisions of this Lease, (b) the names of all subcontractors and material suppliers involved with the Tenant's Initial Work, and (c) that all such subcontractors and material suppliers involved with the Tenant's Initial Work have been paid in full; (iv) Landlord is provided with proof in form reasonably satisfactory to Landlord of complete payment by Tenant of the cost and expense of such materials and laborers who performed any services or delivered any materials in connection with the Tenant's Initial Work, including, but not limited to lien waivers from all contractors, subcontractors and material suppliers; (v) Tenant delivers to Landlord a judgment and lien search dated no more than five (5) days from the date of delivery of same to Landlord from a title company reasonably acceptable to Landlord showing that there are no liens or violations placed against the Demised Premises along with proof reasonably acceptable to Landlord that there are no open building permits with respect to the Demised Premises; (vi) Tenant delivers acceptable proof to Landlord that all open and/or unsatisfied building department applications with respect to the Demised Premises are closed, withdrawn or cancelled; and (vii) Landlord is provided with proof in form reasonably satisfactory to Landlord that all consents, approvals or sign-offs to be obtained by Tenant under any legal requirements or as required by any governmental authority have been obtained.

C. Prior to Tenant commencing any work, including Tenant's Initial Work, respecting any alteration or improvement at the Demised Premises, Tenant shall satisfy each and every condition set forth below:

(1) Tenant shall, at its sole cost and expense, supply Landlord with professionally prepared plans and specifications for Landlord's approval. Tenant shall pay to Landlord the costs and expenses of an engineer and architect engaged by Landlord to review any such plans and specifications. Notwithstanding the issuance of any approval by Landlord, Landlord shall not be responsible for the sufficiency, completeness, quality or legality of any such plans, specifications, contracts or other documents. Notwithstanding the foregoing, Landlord's approval of any plans or specifications, or consent by Landlord to the making of any alterations, installations, additions or improvements (collectively, "Alterations"), does not constitute Landlord's representation that such plans or Alterations comply with any laws, orders, ordinances, rules or regulations of any federal, state, county or municipal authority claiming jurisdiction over the Building or the Demised Premises (collectively, "Legal Requirements"). Landlord shall not

have any liability or responsibility whatsoever if such Plans or Alterations do not comply with all Legal Requirements and shall not be liable to Tenant or any other party in connection with Landlord's approval of any Plans, Landlord's consent to Tenant's performing any Alterations or the failure of such Plans or Alterations to comply with Legal Requirements. Tenant acknowledges and agrees that Tenant and its architects or engineers shall not be permitted to self-certify plans and specifications for any of Tenant's alterations or improvements, including Tenant's Initial Work. Notwithstanding anything in this Lease to the contrary, Tenant's requests to make changes which are nonstructural and which do not affect any building, mechanical, plumbing, electrical, heating or other Building system, shall not be unreasonably withheld, conditioned or delayed.

(2) Subsequent to the delivery and approval by Landlord of Tenant's plans and specifications, Tenant shall employ its own contractor in connection with the construction to be performed at the Demised Premises in accordance with those approved plans and specifications. Tenant agrees that all work to be performed shall be done in accordance with good and sound Building standards and shall be further performed in a professional workmanlike manner. All of the Tenant's work shall be done in accordance with all governmental regulations with the Tenant being responsible at its own cost and expense for obtaining permits and approvals, including asbestos inspection and removal, if necessary, as well as sign-offs and compliance with the other provisions of this Lease. Notwithstanding anything to the contrary herein contained, Tenant shall, at Tenant's sole cost and expense, within thirty (30) days after any construction is completed, or within thirty (30) days after a request by Landlord if no construction has been commenced within ninety (90) days after having applied for a permit (the "Permit Close-Out Period"), close out any permit, approval and/or applications (including, but not limited to a building permit) and provide proof reasonably acceptable to Landlord evidencing the same.

(3) Prior to the commencement of any work by or for Tenant, Tenant shall furnish to Landlord evidence of insurance coverage as required in Article 43 hereof and an executed contractor indemnity agreement on the form attached hereto as Exhibit "B" and made part hereof.

D. In the event that Tenant is unable to obtain a building permit for the performance of Tenant's Initial Work solely as the result of the existence of any violation(s) affecting the Building that are not the responsibility of Tenant to cure (and not for any other reason whatsoever), then following written notice thereof from Tenant, Landlord agrees to proceed diligently and in good faith to cure and/or cause such violation(s) to be discharged of record.

E. In the event Tenant otherwise disturbs any legally encapsulated asbestos during any alteration work, Tenant shall remediate same at Tenant's sole cost.

49. Tenant covenants to pay, as additional rent, all other amounts, liabilities and obligations which Tenant assumes or agrees to pay hereunder (all such other amounts, liabilities and obligations being collectively called "Additional Rent") and any failure on the part of Tenant to pay any item of Additional Rent shall be considered a default, and thereupon Landlord shall have all of the rights, powers and remedies (including any summary dispossess proceedings and other summary remedies) provided for herein or by law, now existing or hereinafter enacted, in the case of non-payment of rent. A bill for Additional Rent sent by the Landlord shall be sufficient evidence of the amount owed and if Tenant does not object in writing to a bill for Additional Rent within a thirty days after receipt, Tenant has acquiesced to the amount sought and cannot challenge it in the future.

50. All of the covenants, promises and agreements of Tenant herein contained shall be deemed and construed to be "conditions" as well as "covenants" as though the words specifically expressing or importing covenants and conditions were used in each separate instance.

51. A. Tenant acknowledges that neither Landlord, nor any agent of Landlord, has made any representations or promises with regard to the Demised Premises for the term herein demised. Except for Landlord's Work, the taking of possession of the Demised Premises by Tenant for the term herein demised shall be conclusive evidence as against Tenant that Tenant accepts the same "as-is" and that the Demised Premises were in good and satisfactory condition at the time such possession was taken. Except for Landlord's Work, Landlord shall not be obligated to make any repairs, alterations, improvements or additions to the Demised Premises for Tenant's occupancy.

B. Landlord agrees, at Landlord's sole cost and expense, to perform the work as shown on the plans attached hereto as Exhibit "C" ( the "Landlord's Work").

C. Simultaneously with Tenant's execution of this Lease, Tenant shall deliver to Landlord an official bank check made payable to the order of Axium Construction Corp., Landlord's designated contractor, in amount of $1,200,000.00 ("Initial Work Contribution") to be applied towards the cost of Landlord's Work and which Initial Work Contribution shall be non-refundable. In the event that the cost of Landlord's Work shall exceed the amount of the Initial Work Contribution, Landlord shall be solely responsible for such excess costs in performing Landlord's Work.

52. A. Notice is hereby given that Landlord and Master Landlord shall not under any circumstances, be liable to pay for any work, labor or services rendered or materials furnished to or for the account of the Tenant upon or in connection with the Demised Premises, and that no mechanic's or other liens for work, labor or services rendered or materials furnished to or for the account of the Tenant shall, under any circumstances, attach to or affect the reversionary or other estate or interest of the Landlord in or to the Demised Premises or in and to any alterations, repairs or improvements to be erected or made thereon.

B. Tenant shall not suffer nor permit, during the term hereby granted, any mechanic's or other liens for work, labor, services or materials rendered or furnished to or for the account of the Tenant upon or in connection with the Demised Premises or to be erected upon the same or any portion thereof. Nevertheless, Tenant shall hold the Landlord and the Demised Premises harmless from all liens or charges, of whatever nature or description, arising from, or in consequence of, any alterations or improvements that the Tenant shall make, or cause to be made, upon the Demised Premises.

C. In addition to the right set forth in Article 3 hereof, if a notice of mechanic's lien be filed against the Demised Premises for labor or materials alleged to have been furnished, or to be furnished at the Demised Premises to or for the Tenant or to or for someone claiming under the Tenant, and if the Tenant shall fail to take such action as shall cause such lien to be discharged within thirty (30) days after notice thereof to Tenant, the Landlord after notice to Tenant may pay the amount of such lien or discharge it by deposit or by bonding proceeding, and in the event of such deposit or bonding proceedings, the Landlord may require the lienor to prosecute an appropriate action to enforce the lienor's claim. In such case, the Landlord may pay any judgment recovered on such claim. Any amount paid or expense incurred or sum of money paid by the Landlord by reason of the failure of the Tenant to comply with any provision of this Lease, or in defending any such action, shall be deemed to be Additional Rent for the Demised Premises, and shall be due and payable by the Tenant to the Landlord on the first day of the next following month or at the option of the Landlord, on the first day of any succeeding month. The receipt by the Landlord of any installment of the regular stipulated rent shall not be waiver of any other Additional Rent then due.

53. Landlord shall not be responsible for any structural defect, latent or otherwise, in the Demised Premises, any requirement for asbestos removal, or change of conditions elsewhere in the Building or in the Demised Premises resulting from Tenant's construction or alteration or for any damages to same or any person or to goods or things contained or placed thereon or in the vicinity thereof.

54. Tenant shall not install any signs or awnings at the Demised Premises without obtaining Landlord's prior written consent (Landlord agrees that its consent shall not be unreasonably withheld). In addition, Tenant agrees that any interior signage and/or display visible from outside the Demised Premises shall be subject to Landlord's prior written approval (Landlord agrees that its approval shall not be unreasonably withheld). In the event the required consent is granted, Tenant shall be required to comply with all applicable rules, laws, building codes, legal requirements and regulations with respect to such sign. Tenant covenants and agrees to provide Landlord with a rendering of the sign at the time that it requests written consent. Tenant, at Tenant's own cost and expense, shall keep such sign in good and working condition, shall procure any and all permits or licenses required for the maintenance thereof, shall comply with all governmental regulations applicable or pertaining to such sign, and shall pay any tax or other charges imposed by a governmental authority with regard to such sign. In the event Landlord shall deem it necessary to remove any such sign or signs in order to paint or to make any other

repairs, alterations or improvements in or upon the Demised Premises, or the Building wherein same is situated, or any part thereof, Landlord shall have the right to do so, provided the same be removed and replaced at Landlord's expenses, whenever the said repairs, alterations or improvements shall have been completed. Tenant acknowledges that Landlord may, during the term of this Lease, seek to have uniform signage and/or awnings for the ground floor tenants in the Building and neighboring buildings and agrees that it shall, upon request of Landlord, at Tenant's sole cost and expense, comply with any uniform signage/awning requirements and replace any existing signs/awnings with those reasonably selected by Landlord. Subject to compliance with all applicable Legal Requirements and provided Tenant obtains Landlord's prior written consent, not to be unreasonably withheld, Tenant shall be permitted to install signage on the exterior of the mall and the pylon and direction sign in the positions formerly occupied by "Best Buy". Notwithstanding the foregoing, Landlord approves the design and content of Tenant's signage shown on Exhibit "D" annexed hereto.

55. The Demised Premises are rented with certain basement space, and the Tenant, at its own cost and expense, will maintain and make all necessary repairs to the stairway, doors and frames, etc. which lead to and are part of the basement space. The Tenant also waives any right to make any claim against the Landlord for any reason whatsoever with regard to any goods or other merchandise of the Tenant which might be stored in the basement space. Notwithstanding anything to the contrary contained herein, Tenant acknowledges that the basement space shall only be used for storage purposes in connection with the use permitted pursuant to Article 2 hereof.

56. Tenant will provide access to the Demised Premises to the Landlord, its agents, servants and/or employees and to any representatives of the utility companies, at all reasonable times and hours, if necessary, upon reasonable prior notice (which may be verbal or by email), except in the case of an emergency (or with respect to access by utility providers where such providers have failed to provide Landlord with prior notice of such access) where no such notice shall be required. Notwithstanding the foregoing, to the extent that any Building systems (i.e., boiler, hot water heater, electric and plumbing lines or connections, telecommunications equipment, etc.) are located on the ground floor level of the Demised Premises or in a portion of the basement that may only be accessed through the Demised Premises, Landlord and their employees, agents and contractors and the representatives of the utility companies, shall have access to such systems twenty-four (24) hours a day, seven (7) days a week to examine same and to make such repairs, replacements and improvements as Landlord may deem necessary or reasonably desirable; provided however, Landlord shall use reasonable efforts to provide Tenant with reasonable prior notice of such access (which may be verbal or by email), except during an emergency (or with respect to access by utility providers where such providers have failed to provide Landlord with prior notice of such access) where no such notice shall be required.

57. Tenant agrees to arrange for the orderly removal of its garbage on a regular basis (at least once in every 24 hours). Garbage is not to be stored outside the Demised Premises or outside the Building except immediately before and during pick up. Failure to comply with these rules shall be deemed a substantial violation of Tenant's occupancy requirements pursuant to this Lease.

58. Tenant is aware that Landlord is leasing the Demised Premises to Tenant conditioned on the fact that Tenant will continuously keep the sidewalk in front of the Demised Premises and two feet in the street clean and free from ice, snow, garbage and debris. Tenant is aware that the street in front of the Demised Premises is a high traffic area and will require continuous scrutiny. Tenant agrees to arrange to sweep the sidewalk each morning if necessary as well as thereafter if necessary, in order to maintain such condition and Tenant shall be responsible for all fines and penalties (including those assessed by the Environmental Protection Agency and/or the Environmental Control Board) which may be imposed arising out of Tenant's failure to comply with the provisions of this Article. Payment of such fines and penalties shall be made to Landlord within five (5) days of receipt of notice thereof and such sums shall be deemed Additional Rent hereunder. Failure to comply with this obligation shall be deemed a substantial default of Tenant pursuant to the conditions of this Lease.

59. All checks or payments tendered to the Landlord as and for the rent of the Demised Premises shall be deemed payments for the account of the Tenant. Acceptance by the Landlord

of rent from anyone other than the Tenant shall not be deemed to operate as an attornment to the Landlord by the payor of such rent or as a consent by the Landlord to assignment or subletting by the Tenant of the Demised Premises to such payor, or as a modification of the provisions of this Lease.

60. There shall be a late charge of five percent (5%) imposed by Landlord if any installment of Tenant's Base rent or Additional Rent has not been received by Landlord by the fifth (5th) day of any month during the Lease term. In addition, if any Base rent, Additional Rent or any other charges due under this Lease are not received by Landlord within ten (10) days after same are due, Tenant shall pay to Landlord interest on the amount due at the rate of one and one-half percent (1 ½%) per month but not to exceed the maximum lawful amount then chargeable under applicable law, computed from the date such payment was due to and including the date of payment. Tenant shall also be liable for any reasonable legal fees and expenses incurred in the collection of rent and/or other charges due and payable under the terms of this Lease. It is expressly agreed and acknowledged that nothing herein contained shall be deemed or construed as permitting or allowing Tenant to make any payment of Base rent and/or Additional Rent at a time other than when same shall be required to be paid pursuant to the provisions of this Lease. The acceptance of the interest and the late charges referred to in this Paragraph shall not in any manner preclude the Landlord from enforcing any of its rights contained elsewhere in this Lease. All such amounts shall be payable as Additional Rent hereunder. If at any time during the term of this Lease, any two (2) of Tenant's Base rent payments are not received by Landlord on or before the tenth (10th) day of any month in which same are due in any twelve (12) month period, then at any time following Tenant's failure to timely make said payments, Landlord may, at its option require Tenant to increase the then required security deposit by two months of the then required Base rent.

61. The terms "Landlord" and "Owner" as used herein shall be deemed synonymous.

62. Supplementing the provisions of Article 11 of this Lease, if Tenant is ever a corporation, partnership, limited liability company or other business entity, the provisions of this Lease limiting or prohibiting the assignment of this Lease or subletting of the Demised Premises pursuant thereto shall be deemed to have been violated by the transfer of the stock, partnership interests, membership interests or other ownership interests of Tenant, as the case may be. Any transfer of 50% or more, by operation of law or otherwise, of the interest of Tenant in this Lease (in whole or in part) or of any interest in Tenant (whether stock, partnership interest or otherwise) shall be deemed an assignment of this Lease (the issuance of shares of such stock to other than the existing shareholders shall be deemed to be a transfer of such stock for the purposes of this Paragraph). Tenant represents that as of the date of execution of this Lease, Tenant is a New York limited liability company, one hundred percent of the interest of which is owned by Wisam Assaedi. At any time and from time to time, within five (5) days after written request by Landlord, Tenant shall furnish to Landlord, a written statement certified by an attorney or an independent certified public accountant or an affidavit sworn to by the chief executive officer or a general partner of Tenant, setting forth the identity of every holder of an interest, the type and character of each such interest (e.g. number of shares of common stock, general partnership interest, etc.) and the percentage of ownership of each such holder.

63. If, in connection with obtaining financing or refinancing for the Unit, a banking, insurance or other institutional lender shall request reasonable modifications to this Lease as a condition to such financing or refinancing, Tenant will not unreasonably withhold, delay or defer its consent thereto, provided that such modifications do not increase the obligations of Tenant hereunder (except, perhaps, to the extent that Tenant may be required to give notice of any defaults by Landlord to such lender and/or permit the curing of such defaults by such lender together with the granting of such additional time for such curing as may be required for such lender to get possession of the said Unit) or materially adversely affect the leasehold interest hereby created. In no event shall a requirement that the consent of any such lender be given for any modification of this Lease or for any assignment or sublease be deemed to materially adversely affect the leasehold interest hereby created.

64. The submission of this Lease to Tenant shall not be construed as an offer, nor shall the Tenant have any rights with respect thereto unless and until Landlord shall, or cause Managing

Agent to execute a copy of this Lease and deliver same to Tenant.

65. Should Tenant ever contest any lack of consent by Landlord, its sole remedy shall be an action in a court of equity to determine as to whether such consent should or should not have been granted. Tenant shall have no right to bring any action for damages against the Landlord as a result of any failure to grant such consent.

66. Tenant agrees to conduct its business in such manner that no odors of any kind or nature shall penetrate from the Demised Premises to any other part of the Building. No cooking or baking shall be permitted in the Demised Premises.

67. Tenant covenants and agrees that, except as otherwise specifically provided in this Lease, no refuse, garbage or supplies or other obstruction, including without limitation, any signs, tables or chairs or other obstruction, shall be allowed or permitted to remain on the sidewalk in front of the store or on any street adjoining the Demised Premises or the Building of which the Demised Premises are a part, or permit the public lobby of the Building, nor any public corridor of the Building, other than the Demised Premises herein, to be obstructed or utilized at any time by Tenant for its garbage, refuse or supplies. Tenant further covenants and agrees to keep all garbage, waste matter and refuse effectively covered in clean and sanitary containers.

68. Tenant covenants and agrees to clean and maintain the store front portion of the Demised Premises including, without limitation, all glass and metal portions thereof in good condition and repair, and shall generally maintain the Demised Premises in a neat and orderly manner. Tenant shall maintain plate glass insurance in an amount and with a company reasonably satisfactory to Landlord throughout the term of this Lease insuring the plate glass in the Demised Premises. Tenant shall deliver a copy of such insurance policy to Landlord and shall deliver renewals thereof at least fifteen (15) days prior to the expiration of any existing policy. Should the Tenant fail to take out, pay for, maintain or deliver such insurance policy, then Landlord may obtain such insurance coverage and pay the premiums therefor and all sums so paid by Landlord shall be deemed Additional Rent hereunder and shall be payable ten (10) days after the submission of a statement therefor.

69. Tenant agrees to conduct a continuous business operation at the Demised Premises, the same being construed to require that the Demised Premises be and remain open for business seven days per week. Any period of time during which the Demised Premises shall remain closed, beyond a reasonable period for alterations or in the event of a casualty, shall be deemed a desertion and abandonment of the Demised Premises by Tenant. Tenant, as a special inducement to Landlord to enter into this Lease, hereby represents and warrants, and covenants and agrees, that, Tenant shall not be open for business between the hours of 12:00 a.m. and 7:00 a.m. Any failure by Tenant to comply with the requirements of this Article shall be deemed a material breach of this Lease, for which Landlord shall be entitled to any and all of its remedies in accordance with the terms, conditions and covenants of this Lease.

70. Tenant shall not allow any noise, vibrations or music in the Demised Premises which shall be objectionable to Landlord or to other tenants of the Building. Tenant shall not maintain loudspeakers which may be heard from outside the Demised Premises nor permit any other sounds to emanate from and be heard outside the Demised Premises. Upon the request of Landlord, Tenant shall immediately cease and desist from any action which shall cause a violation of the aforesaid provision. Failure to comply with this provision of the Lease shall constitute a breach of the terms of the same entitling Landlord to all the remedies heretofore set forth with respect to breach of the covenants of the Lease. Tenant is aware that other portions of the Building are occupied as residences and it is essential that such occupants not be disturbed. It shall be deemed a substantial violation of the tenancy under this Lease should Tenant fail to comply with the within paragraph. As a material inducement to Landlord's execution and delivery of this Lease, Tenant expressly agrees no live music or other entertainers shall be permitted in the Demised Premises.

71. Tenant shall, at its own cost and expense, retain an exterminator approved by Landlord, to regularly service Tenant's business so as to keep the premises free from roaches, vermin and other infestation of any kind.

72. Tenant agrees to conduct its business so that it will not interfere with any of the other occupants in the Building. As a material inducement to Landlord to enter into this Lease, Tenant covenants and agrees that at all times (i) the business to be conducted at, through and from the Demised Premises will be high quality and reputable in every respect, (ii) the sales methods employed in said business, as well as all other elements of merchandising, display and advertising, will be consistent with best practices used by other similar tenants in similar buildings in Manhattan, and (iii) the appearance of the Demised Premises (including the lighting and other appurtenances thereto), the appearance and deportment of all personnel employed therein, and the appearance, number, location, nature and subject matter of all displays and exhibits placed or installed in or about the Demised Premises, and of any signs, lettering, announcements, or any other kinds of forms of inscriptions displayed in or about the Demised Premises will be only such as meet with Landlord's reasonable approval, and if at any time reasonably disapproved by Landlord, Tenant shall remove the basis for such disapproval in such manner and within such reasonable time as may be specified by Landlord in a written notice given by it to Tenant for such purpose.

73. Tenant shall not use, generate, release, manufacture, produce, process or store any "Hazardous Materials" (as that term is defined hereinbelow) at the Demised Premise nor transport any Hazardous Materials to and from the Demised Premises. The term "Hazardous Materials" shall include any thing, process or event which could be deleterious, hazardous or harmful to the health and/or well-being of any occupant, resident, tenant or individual present at the Building and shall include, without limitation, flammables, explosives, radiation, x-rays, radioactive materials, asbestos, polychlorinated biphenyls, chloroflourocarbons, chemicals or processes known to cause cancer or radioactive toxicity, pollutants, contaminants, hazardous waste, toxic substances or related materials and substances declared to be hazardous or toxic under any law, code or regulation now or hereinafter enacted or promulgated by any governmental, quasi-governmental or regulatory authority.

74. Intentionally omitted.

75. Supplementing the provisions of Article 31 of this Lease, Tenant shall, upon demand, deposit with Landlord the full amount of security deposit so used or applied by Landlord, in order that Landlord shall have the full security deposit on hand at all times during the term of this Lease. Upon execution of this Lease, Tenant shall deliver to Landlord a security deposit in the amount of $300,000.00.

76. Supplementing Article 4 of this Lease, Tenant shall be responsible for all Landlord's repair obligations as contained in the Prime Lease. For the purposes of clarity and so that there is no confusion, following the Commencement Date, Landlord shall have no obligation to perform any repairs to the Demised Premises.

77. Should the Tenant hold over in possession after the expiration or sooner termination of the original term or of any extended term of this Lease, such holding over shall not be deemed to extend the term or renew the Lease, but such holding over thereafter shall continue upon the terms and conditions herein set forth except that the charge for use and occupancy for such holding over for each calendar month or part thereof (even if such part is but a small fraction of a calendar month) shall be the sum of:

(a) 1/12 of the highest base annual rent rate set forth in Paragraph 40A of this Lease in effect for the last year of this Lease, times 1.50, plus

(b) 1/12 of all other items of annual additional rental, which additional rental would have been payable pursuant to this Lease, had this Lease not expired, plus

(c) those other items of additional rent (not annual additional rent) which would have been payable monthly pursuant to this Lease, had this Lease not expired,

which total sum Tenant agrees to pay to Landlord promptly upon demand, in full, without set off.

Neither the billing nor the collection of use and occupancy in the above amount shall be deemed a waiver of any right of Landlord to collect damages for Tenant's failure to vacate the Demised Premises after the expiration or sooner termination of this Lease. The aforesaid provisions of this Article shall survive the expiration or sooner termination of this Lease.

78. To further secure Tenant's obligations under this Lease, Tenant hereby grants to Landlord a security interest in (i) all property and fixtures affixed to or located on the Demised Premises which, to the fullest extent permitted by law, shall be deemed fixtures and a part of the real property, and (ii) all articles of personal property, trade fixtures and all materials delivered to the Demised Premises for use in Tenant's business operation. This provision is a self-operative security agreement with respect to such property, but Tenant agrees to execute and deliver on demand such other instruments as Landlord may request in order to perfect its security interest or to impose the lien hereof more specifically upon any of such property. Landlord shall have all the rights and remedies in addition to those specified herein of a secured party under the New York Uniform Commercial Code.

79. A. Provided then named Tenant is then occupying the entire Demised Premises, Tenant shall have the option to extend the term of this Lease (with the Demised Premises in its then "as is" condition) for one (1) additional period of five (5) years (the "Renewal Option"). The Renewal Option shall commence on the first day of the sixteenth (16th) lease year and end on the last day of the twentieth (20th) lease year, or until such term shall sooner cease and terminate as provided in this Lease (such period shall be referred to herein as the "Renewal Term"). The Renewal Term shall be upon the same terms and conditions as contained in this Lease (unless changed or modified by mutual agreement) except that the Base rent for the Renewal Term shall be as follows:

$1,882,004.37 per annum ($156,833.70 per month) during the sixteenth lease year;

$1,938,464.50 per annum ($161,538.71 per month) during the seventeenth lease year;

$1,996,618.44 per annum ($166,384.87 per month) during the eighteenth lease year;

$2,056,516.99 per annum ($171,376.42 per month) during the nineteenth lease year; and,

$2,118,212.50 per annum ($176,517.71 per month) during the twentieth lease year.

B. The exercise of the Renewal Option shall only be effective upon written notice of such election given by Tenant to Landlord not earlier than 18 months and not later than 12 months prior to the expiration of the then current term. **Time shall be of the essence** in connection with the exercise of the Renewal Option hereunder. Landlord shall have the right, at its option, to nullify Tenant's exercise of the Renewal Option if Tenant shall be in default under any of the terms, covenants and conditions of the Lease (i) at the time Tenant gives written notice to Landlord of its election to exercise the Renewal Option; or (ii) at the commencement date of the Renewal Term.

80. Tenant shall, at its sole cost and expense, be liable and responsible for repairing and cleaning any and all waste drains and pipes in and from the Demised Premises which may become clogged or stopped from any waste or sewage emanating from the Demised Premises. Tenant shall also enter into a contract with a company which does twice-a-year inspection and cleaning of said system. If more frequent inspections are required by Landlord's insurance carrier, Tenant shall provide and pay for such additional inspection.

81. Notwithstanding anything in this Lease to the contrary, should any law or regulation imposing either any of (i) a required rent restriction, abatement, rebate or control; or (ii) any obligation to renew any lease; or (iii) any requirement that any renewal be submitted to arbitration; or (iv) any regulation that otherwise materially restricts Landlord and Tenant's respective rights to freely negotiate renewals of this Lease be imposed on this Lease, on the demised premises or on Tenant and/or Landlord, then, in addition to any other remedies included in this Lease, effective the earlier of the day such regulation is enacted into law or as of day before any such regulation

becomes effective, all rights to assign this Lease or to sublet any or all of the demised premises shall be strictly prohibited without the prior written consent of Landlord, which consent may be arbitrarily withheld.

82. (a) This Lease and all rights of Tenant hereunder are, and shall be, subject and subordinate to: (i) that certain Prime Lease (as defined in Section (d) of this Article), any future ground leases, operating leases, superior leases, underlying leases and grants of term of the land on which the Building stands ("Land") and the Building or any portion thereof (collectively, including the applicable items set forth in subparagraph (iv) below, the "Superior Lease") (ii) all mortgages and Building loan agreements, including leasehold mortgages and spreader and consolidation agreements, which may now or hereafter affect the Land, the Building or the Superior Lease (collectively, including the applicable items set forth in subparagraphs (iii) and (iv) below, the "Superior Mortgage"); (iii) each advance made or to be made under the Superior Mortgage; and (iv) all amendments, modifications, supplements, renewals, substitutions, refinancings and extensions of the Superior Lease and the Superior Mortgage and all spreaders and consolidations of the Superior Mortgage. The provisions of this Article shall be self-operative and no further instrument of subordination shall be required: Tenant shall within fifteen (15) days, promptly execute and deliver any instrument, in recordable form, if requested, that Landlord, Superior Lessor or the Superior Mortgagee may reasonably request at any time and from time to time to evidence such subordination; and if Tenant fails to execute, acknowledge or deliver any such instrument within fifteen (15) days after request therefor, Tenant hereby irrevocably constitutes and appoints Landlord as Tenant's attorney in fact, coupled with an interest, to execute, acknowledge and deliver any such instruments for, and on behalf of, Tenant.. The Superior Mortgagee may elect that this Lease shall be deemed to have priority over such Superior Mortgage, whether this Lease is dated prior to, or subsequent to, the date of such Superior Mortgage. If, in connection with obtaining, continuing or renewing of financing for which the Building, Land or the interest of the lessee under the Superior Lease represents collateral, in whole or in part, the Superior Mortgagee shall request reasonable modifications of this Lease as a condition of such financing, Tenant shall execute said modification provided that such modifications do not materially and adversely increase the obligations of Tenant hereunder, diminish the rights of Tenant hereunder, or cause a change in Tenant's financial obligations hereunder.

(b) If, at any time prior to the termination of this Lease, any Superior Lessor or Superior Mortgagee or any other person or the successors or assigns of the foregoing (collectively referred to as "Successor Landlord") shall succeed to the rights of Landlord under this Lease, Tenant agrees, at the election and upon request of any such Successor Landlord, to fully and completely attorn to and recognize any such Successor Landlord, as Tenant's Landlord under this Lease upon the then executory terms of this Lease; provided such Successor Landlord shall agree in writing to accept Tenant's attornment. The foregoing provisions of this subparagraph shall inure to the benefit of any such Successor Landlord, shall apply notwithstanding that, as a matter of law, this Lease may terminate upon the termination of the Superior Lease, shall be self-operative upon any such demand, and no further instrument shall be required to give effect to said provisions. Upon the request of any such Successor Landlord, Tenant shall execute and deliver, from time to time, instruments satisfactory to any such Successor Landlord in recordable form if requested to evidence and confirm the foregoing provisions of this subparagraph, acknowledging such attornment and setting forth the terms and conditions of its tenancy. Tenant hereby constitutes and appoints Landlord attorney in fact for Tenant to execute any such instrument, for and on behalf, of Tenant, such appointment being coupled with an interest. Upon such attornment this Lease shall continue in full force and effect as a direct Lease between such Successor Landlord and Tenant upon all of the then executory terms of this Lease except that such Successor Landlord shall not be: (i) liable for any previous act or omission or negligence of Landlord under this Lease; (ii) subject to any counterclaim, defense or offset, not expressly provided for in this Lease and asserted with reasonable promptness, which theretofore shall have accrued to Tenant against Landlord; (iii) bound by any previous modification or amendment of this Lease made after the granting of such senior interest, or by any previous prepayment of more than one month's Base rent or Additional Rent, unless such modification or prepayment shall have been approved in writing by any Superior Lessee or Superior Mortgagee through or by reason of which the Successor Landlord shall have succeeded to the rights of Landlord under this Lease; (iv) obligated to repair the Demised Premises or the Building or any part thereof, in the event of total or substantial damage beyond such repair

as can reasonably be completed with the net proceeds of insurance actually made available to Successor Landlord, provided all insurance to be maintained by Landlord is thus maintained; or (v) obligated to repair the Demised Premises or the Building or any part thereof, in the event of partial condemnation beyond such repair as can reasonably be completed with the net proceeds of any award actually made available to Successor Landlord, or consequential damages allocable to the part of the Demised Premises or the Building not taken. Nothing contained in this subparagraph (b) shall be construed to impair any right or otherwise exercisable by any such Successor Landlord.

(c) If any act or omission by Landlord would give Tenant the right, immediately, or after lapse of time, to cancel or terminate this Lease or to claim a partial or total eviction, Tenant will not exercise any such right until (i) it has given written notice of such act or omission to each Superior Mortgagee and each Superior Lessor, whose name and address shall have previously been furnished to Tenant, by delivering notice of such act or omission addressed to each such party at its last address so furnished, and (ii) a reasonable period for remedying such act or omission shall have elapsed following such giving of notice and following the time when such Superior Mortgagee or Superior Lessor shall have become entitled under such Superior Lease or Superior Mortgage, as the case may be, to remedy the same (which shall in no event be less than the period to which Landlord would be entitled under this Lease to effect such remedy) provided such Superior Mortgagee or Superior Lessor shall, with reasonable diligence, give Tenant notice of its intention to remedy such act or omission and shall commence and continue to act upon such intention.

(d) The Lease is subject to Court approval. For purposes of this Lease the term "Prime Lease" means the certain Retail Lease (the "Original Lease"), dated as of July 29, 1996, between Dyker Associates, ("Original Landlord"), and Modell's NY II, Inc. d/b/a Modell's Sporting Goods, as tenant (the "Original Tenant") with respect to a portion of 531 86th Street, Brooklyn New York as further described in the Original Lease (the "Original Premises") as modified and assigned by (i) Amendment to Lease, dated September 3, 1996, between Original Landlord, as, and Original Tenant, as tenant ("First Amendment"), (ii) Second Amendment to Lease, dated June 28, 2013, between Original Landlord, as landlord, and Original Tenant, as tenant ("Second Amendment") which Second Amendment, inter alia, amended the Original Lease to include an additional portion of 531 86th Street, Brooklyn New York as further described in the Second Amendment (the "Extension Premises"), (iii) Bankruptcy Order of Original Tenant dated September 11,2020 (Case No. 20-14179, District of New Jersey), (iv) Assumption and Assignment Agreement, dated September 15, 2020 between Original Tenant, as assignor, and Landlord, as assignee, (v) Assignment and Assumption Agreement between Original Landlord, as assignor, to CA 531 86th Street LLC, as assignee (" Master Landlord"), (vi) Subordination, Non-Disturbance and Attornment Agreement, dated as of March 19, 2021, by and among Signature Bank, as mortgagee , Landlord, as landlord, and Sublandlord, as tenant ("SNDA"). Tenant acknowledges that this Lease is subject and subordinate to the Prime Lease. Tenant hereby agrees that (i) Tenant shall not do or permit or suffer to be done any act or omission by Tenant, its agents, employees, contractors, invitees, guests, or representatives that is prohibited by the Prime Lease, or that would in any way contravene or give rise to a default under the Prime Lease (ii) except as otherwise provided in this Lease or to the extent inconsistent with the provisions hereof, all acts to be done by Landlord, as tenant under the Prime Lease, with respect to the Demised Premises and all obligations of Landlord, as tenant to Master Landlord under the Prime Lease, shall be done or performed by Tenant, and Tenant's obligations shall run both to Landlord and Master Landlord, (iii) Tenant shall not do, nor permit to be done, any act or thing which would result in an increase of Landlord's rent or Additional Rent or any other obligation or liability of Landlord under the Prime Lease or which is or, with notice or the passage of time, would be a default under the Prime Lease or which causes the Prime Lease to be cancelled, terminated, forfeited or surrendered, or which causes Landlord to be liable for any damages, claims or penalties thereunder, (iv) notwithstanding anything to the contrary set forth in this Lease, wherever in this Lease Landlord has an obligation which Master Landlord is obligated to perform under the Prime Lease, Master Landlord and not Landlord shall be solely responsible for performing such and Landlord shall not be responsible for any failure or interruption, for any reason whatsoever, of the services or facilities that may be appurtenant to or supplied to or at the Demised Premises by the Master Landlord; and no failure to furnish such obligation shall give rise to any (x) abatement, diminution

or reduction of Tenant's obligation under this Lease , (y) actual or constructive eviction, whether in whole or in part, or (z) liability on the part of Landlord, or (z) right of Sublessee to cancel or terminate this Lease.

(E) Landlord Represents that the Master Lease is in full force and effect and that Landlord is not in default beyond applicable notice and cure period of any provisions of the Master Lease. Landlord hereby agrees that in the event of a default by Master Landlord beyond applicable notice and cure period under the Master Lease not caused by any action or omission of Tenant that results in a final non-appealable order from a court of competent authority terminating the Master Lease, Tenant shall have the right to terminate this Lease by delivering thirty (30) days written notice to Landlord and this Lease shall terminate as of such thirtieth (30th) day following Landlord's receipt of the termination notice (the "Early Termination Date") and provided that Tenant has timely surrendered the Demised Premises on or before the Early Termination Date, ,neither party shall have any further rights and obligations following such Early Termination Date.

83. As a material inducement to Landlord's execution of this Lease and as a condition precedent to the validity of this Lease, Wisam Assaedi, simultaneously with the execution of this Lease, executed and delivered to Landlord a guaranty.

84. This Lease may be executed in one or more counterparts (all of which when taken together shall constitute one instrument) and may be executed and delivered by electronic format (including DocuSign), by facsimile, or electronic transmission of a scanned image (in PDF format or otherwise) each of which, when so executed, shall be deemed an original and shall have the same force and effect as an originally executed document. Upon written request from the other party, a party delivering this Lease will deliver a "hard" original signature copy of this Lease to the other party, but the failure to do so will not affect or vitiate the viability of this Lease or the admissibility into evidence of the electronically transmitted counterpart.

**IN WITNESS WHEREOF**, the parties hereto have duly executed this Lease as of August 30, 2023.

**Landlord:**
**403 LLC**

**By:** ______________________

**Tenant:**
**SWY ENTERTAINMENS LLC**

**By:** ______________________ Pres

**EXHIBIT A**

**DEMISED PREMISES – SPACE PLAN**


EXHIBIT A - DEMISED PREMISES
FIRST FLOOR
MEZZANINE
CONVEYOR
ELEV.
UP
DN


EXHIBIT A - DEMISED PREMISES
GROUND FLOOR RETAIL
AREA NOT SURVEYED
DISPLAY
ELEV.

## EXHIBIT B

## PROPERTY OWNER'S AGREEMENT WITH TENANT'S CONTRACTOR

In consideration for permission to work at 231 86th Street, Brooklyn, New York ("Premises"), the undersigned contractor (the "Contractor") agrees to the following:

Contractor, its subcontractors and sub-subcontractors shall not commence work until it has obtained all insurance referred to herein and provided proof as set forth and has been approved by 403 LLC ("Landlord").

Contractor and its subcontractors and sub-subcontractors shall secure, pay for and maintain the following insurance policies in full force and effect during the term of the agreement:

(1) Property Insurance upon all tools, material and equipment (owned, borrowed or leased by the Contractor or their employees) to the full replacement value thereof during the full term of this contract. This insurance shall insure against damage or loss caused by fire and all other perils covered by a standard "All Risk" insurance policy. Contractor agrees to waive its right of subrogation against Landlord, Landlord's managing agent ("Managing Agent"), CA 531 86th Street LLC ("Master Landlord"), and consultants. Failure of the Contractor to secure and maintain adequate coverage shall not obligate Landlord or its agents or employees for any losses.

(2) Workers Compensation affording coverage under the Workers Compensation laws of the State of New York and Employers Liability coverage subject to a limit of no less than $1,000,000 each employee, $1,000,000 each accident, and $1,000,000 policy limit.

(3) Commercial General Liability Insurance written on ISO form CG00 01 10/01 (or its equivalent) with limits of $1,000,000 per occurrence Bodily Injury and Property Damage Combined, $1,000,000 per occurrence Personal & Advertising Injury, $1,000,000 aggregate Products and Completed Operations Liability and $2,000,000 General (per project) Aggregate. The policy shall not contain exclusions relating to: Labor Law Exclusions or Employer's Liability Exclusions and shall be written on an occurrence basis. Any deductible shall be the responsibility of the contractor.

The policy shall not contain exclusions relating to:

(a) contractual liability;
(b) independent contractors;
(c) gravity related injuries; or
(d) injuries sustained by employee of an insured or any insured.

Additional Insureds – The Commercial General Liability policy shall be endorsed to name Landlord, Managing Agent, Master Landlord, Landlord's lender (if required) and their subsidiaries, successors, affiliates and all other entities that may be reasonably required (hereinafter referred to as "Additional Insureds") as Additional Insured utilizing ISO Forms CG2010 and CG2037 or their equivalents. The definition of Additional Insured shall include all officers, directors, partners, members, shareholders, employees, agents, and designees. Further, insurance policies shall provide coverage for the Additional Insureds on a primary and non-contributory basis irrespective of any other insurance available to the Additional Insureds, whether collectible or not.

Completed Operations coverage shall remain in force for not less than three (3) years after completion of the work.

(4) Automobile Liability Insurance for Bodily Injury and Property Damage in the amount of $1,000,000 combined and covering all owned, non-owned and hired vehicles. Such policy shall include coverage for Additional Insureds as defined in Section (3) of this Agreement.

(5) Umbrella Liability Insurance for the total limit purchased by Contractor but, not less than a $5,000,000 limit providing excess coverage over all limits and coverages noted in paragraph 2, 3, and 4 above. This policy shall be written on an "occurrence" basis and shall cover the same Additional Insureds as defined in Section (3) above. Coverage for the Additional Insureds shall apply on a primary and non-contributory basis irrespective of any other insurance available to Additional Insureds, whether collectible or not.

All policies (except automobile) shall allow for a Waiver of Subrogation in favor of Additional

Insureds as defined in Section (3).

All policies noted above shall be written with insurance companies permitted to do business in the State of New York and rated no lower than A-8 in the most current edition of A.M. Best's Property-Casualty Key Rating Guide.

(6) EVIDENCE (NOTICES) OF COMPLIANCE

All policies shall be endorsed to provide that in the event of cancellation, non-renewal or material modification, Landlord shall receive thirty (30) days prior written notice thereof.

Contractor shall furnish Landlord with Certificates of Insurance no later than (5) days prior to commencement of work and upon Landlord's request, shall provide Landlord with complete copies of the aforementioned policies including all endorsements attached thereto evidencing compliance with all insurance provisions noted above.

All Certificates and policy termination notices should be delivered via certified mail to:

403 LLC
9322 3rd Avenue
Suite 502
Brooklyn, New York 11209
Attention: Tim Ziss

FAILURE TO COMPLY WITH ANY OF THE REQUIREMENTS NOTED ABOVE WILL RESULT IN A BREACH OF THIS CONTRACT BY THE CONTRACT

(7) INDEMNIFICATION/HOLD HARMLESS

It is understood and agreed that to the fullest extent permitted by law, the Contractor shall be solely responsible for, and shall indemnify, defend and hold harmless the Additional Insureds as defined in Section (3) of this Agreement from and against any and all claims, losses, costs, liabilities, damages, injuries or death, of any nature whatsoever (collectively "Claims") actually or allegedly arising out of or relating to Contractor's work or the work of any subcontractor retained by Contractor. Contractor's indemnity, defense and hold harmless obligations hereunder are triggered regardless of whether such "Claims" are attributable in part to any fault or negligence on the part of the Additional Insureds. Contractor shall, on demand, immediately defend Additional Insureds in any lawsuit commenced against Additional Insureds which actually or allegedly arises out of Contractor's work or the work of any subcontractor. Contractor shall reimburse Additional Insureds for any and all such "Claims" and lawsuits, including any costs or expenses Additional Insureds incur in defending a lawsuit, pursuing indemnification and enforcing the terms of this agreement. Contractor shall ensure that no work is performed by a subcontractor unless that subcontractor is bound by written agreement containing indemnity language at least as broad as that contained herein favoring Additional Insureds. In addition, Contractor agrees that the indemnification obligation shall not be limited in any way by any limitation on the amount or type of damages, compensation or benefits payable by or for the Contractor under Workers Compensation acts, disability benefit acts or other employee benefit acts. If for any reason any part of this indemnification shall be in contravention of any statute, ordinance, regulation or rule, or any decision of any court or adjudicatory body, then this indemnification shall survive to the fullest extent permitted thereby. In addition, this clause shall survive the expiration or termination of this contract and the work.

By: ______________________________
Contractor

______________________________
Name, Title

Date: ______________________________

By: ______________________________
Landlord

______________________________
Name, Title

Date: ______________________________

**EXHIBIT C**

**LANDLORD'S WORK**


PROPERTY LINE
PROPERTY LINE
PROPERTY LINE
PROPERTY LINE
PARTY ROOMS 2,000 SF
27'-10"
MEZZANINE - PROPOSED
SCALE: 1/16"=1'-0"




2ND FLOOR PLAN – PROPOSED #1

SCALE: 1/16"=1'-0"


1ST FLOOR PLAN - PROPOSED
SCALE: 1/16"=1'-0"
15,000 SF
86TH STREET
SIDEWALK
STORE #2 ENTRANCE
STORE #2 (LOWER)
FRONT COUNTER
PROPERTY LINE
REAR ALLEY
ACCESS LADDER
74'-10"
39'-6"
42'-3½"

**EXHIBIT D**

**SIGNAGE**

# GUARANTY

Dated: August 30, 2023

In consideration of the Agreement of Lease dated August ____, 2023 (the "Lease"), between 403 LLC ("Landlord") and SWY ENTERTAINMENTS LLC ("Tenant"), with respect to the certain ground floor and second floor space located in the building known as 531 86th Street, Brooklyn, New York 11209 (the "Demised Premises"), as more fully set forth in the Lease, the undersigned WISAM ASSAEDI (sometimes hereinafter called "Guarantor") does hereby, on behalf of itself and its heirs, executors and administrators and successors and assigns, unconditionally guarantee to Landlord and its executors, administrators, heirs and successors and assigns the full and timely payment, performance and observance of, and compliance with all of Tenant's obligations under the Lease, including, without limitation, the full and prompt payment of all Base rent, Additional Rent, and all other charges and sums due and payable by Tenant under the Lease (including, without limitation, Landlord's reasonable attorneys' fees and disbursements) (collectively, the "Obligations") that accrue through and including the date that Tenant and its assigns and sublessees, if any, shall have completely performed all of the following (collectively, the "Surrender Conditions"):

(a) provided written notice to Landlord (pursuant to the notice requirements in the Lease) of Tenant's intention to vacate and surrender the Demised Premises to Landlord (the "Surrender Notice") on a specified date (the "Surrender Date"), which Surrender Date must be at least twelve (12) months after the date of the Surrender Notice; provided, however, that such Surender Notice may not be served prior to the last day of the second lease year (as defined in the Lease), and any purported notice to vacate served prior to such date shall be null and void and of no force or effect;

(b) vacated and surrendered the Demised Premises to Landlord pursuant to the terms of the Lease;

(c) delivered the keys to the Demised Premises to Landlord;

(d) paid to Landlord and performed all Obligations that accrued through and including the date which is the later of: (i) the Surrender Date, (ii) the date the Demised Premises is actually surrendered to Landlord, (iii) the receipt by Landlord of the keys to the Demised Premises and (iv) the date on which all charges that have accrued under the Lease have been paid (for the avoidance of doubt, this subsection (d) shall not be satisfied if any Obligations under the Lease have accrued and are unpaid or have not been performed);

(e) paid to Landlord the remaining unamortized costs incurred by Landlord in connection with the Lease which shall be calculated as follows: the sum of (i) any commission paid by Landlord to any broker in connection with the Lease, (ii) legal fees incurred in connection with the Lease and (iii) the cost of Landlord's Work (as defined in the Lease), times a fraction, the numerator of which shall be the number of months (full or partial) from the Surrender Date until the expiration date of the Lease and the denominator of which shall be the number of months (full or partial) from the Commencement Date (as defined in the Lease) until the expiration date of the Lease; and

For avoidance of doubt, Guarantor will be responsible for all Obligations that accrue under the Lease until the later of: (I) the date that is twelve (12) months after Landlord receives the Surrender Notice (II) the last day of the third lease year and (III) the date of Tenant's satisfaction of the Surrender Conditions and other requirements in this Guaranty.

In addition to the foregoing, Guarantor does hereby, on behalf of it and its heirs, executors and administrators and successors and assigns, unconditionally guarantee to Landlord and its executors, administrators, heirs and successors and assigns the payment of any amounts necessary to cure any liens related to alteration work performed by or on behalf of Tenant and enforcing the Guarantor's Obligation under this Guaranty (the "Additional Obligations"). The undersigned waives any notice of nonpayment, non-performance, non-observance, or non-compliance, or proof, notice, or demand whereby to charge the undersigned.

In no event shall Tenant or Guarantor be allowed to apply any portion of the security deposit held pursuant to the Lease to satisfy any of the Obligations or the Additional Obligations set forth in this Guaranty. The undersigned hereby further expressly covenants and agrees that the obligation of the undersigned hereunder shall in no way be terminated or otherwise affected or impaired by reason of any assertion by Landlord against Tenant of any of the rights or remedies available to Landlord

pursuant to the Lease or allowed at law or in equity.

This Guaranty is an absolute and unconditional guaranty of payment and performance. The undersigned hereby covenants and agrees to and with Landlord and its successors and assigns, that the undersigned may be joined in any action or proceeding against Tenant in connection with the Obligations and /or Additional Obligations, and that recovery may be had against the undersigned in such action or proceeding or in any independent action or proceeding against the undersigned without Landlord or its successors or assigns first pursuing or exhausting any remedy or claim against Tenant or its heirs, executors, administrators, successors or assigns or any other remedy or claim under any other security for, or guaranty of, the obligations of Tenant under the Lease.

This Guaranty shall be a continuing guaranty and shall survive the expiration date or earlier termination of the Lease. The undersigned further covenants and agrees that this Guaranty shall not be affected or impaired by, and shall remain and continue in full force and effect as to any renewal, modification or extension of the Lease and as to any assignment or subletting and shall cover, apply to and incorporate all of the terms, covenants and conditions of all such renewals, modifications, extensions, assignments and sublettings without need of any notice to or consent of the undersigned.

Any terms not otherwise defined herein shall have the meaning ascribed to them in the Lease.

In the event that Guarantor is more than one party, the obligations of said parties shall be joint and several. This Guaranty cannot be modified, waived or terminated unless such modification, waiver or termination is in writing, signed by Landlord.

As a further inducement to Landlord to make and enter into the Lease, Guarantor covenants and agrees that (i) in any action or proceeding brought in respect of this Guaranty, the undersigned hereby waives trial by jury, (ii) the Supreme Court of the State of New York of the County of New York (or, in a case involving diversity of citizenship, the United States District Court for the Southern District of New York) shall have jurisdiction of any action or proceeding and (iii) service of any summons and complaint or other process in any such action or proceeding may be made by certified mail directed to the undersigned at the address below set forth, personal service being hereby waived. This Guaranty shall be enforced and construed in accordance with the laws of the State of New York and shall be binding upon and inure to the benefit of Landlord and the undersigned and their respective heirs, executors, administrators, legal representatives, successors and assigns.

Guarantor hereby represents that it has carefully read this Guaranty in its entirety; that it has consulted with an attorney of its own choosing; that it fully understands its rights, obligations and responsibilities hereunder; that it voluntarily assents to all of the terms and conditions contained herein, and that it is signing this Guaranty voluntarily and without force or duress of any kind.

IN WITNESS WHEREOF, the undersigned has executed this Guaranty as of the date first above written.

____________________________

Wisam Assaedi, Guarantor

Address: 8504 121st Street
Kew Gardens, New York 11415

SSN#: 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